GATLING *v.* RODMAN and Another.·

May Term,
1855.

GATLING    | 6   289|
   v.      |144   55|
RODMAN.

If a person owning an interest in land, and being fully apprised of his rights, stands by and allows a third person to become the purchaser, knowing that he is ignorant of such rights, and suffers him to improve the property under the belief that his title is valid, the person owning such interest (even though an infant or a married woman) is guilty of a fraud, and will be estopped afterwards from asserting such interest against the purchaser.

The phrase "standing by," in such cases, does not import actual presence, but knowledge under such circumstances as render it the duty of the possessor to communicate it.

When a married woman is the owner of real estate, the fraudulent concealment by the husband of her interest, to the prejudice of a purchaser who is ignorant thereof, can not affect the wife, unless she participated in such fraud.

APPEAL from the *Boone* Circuit Court.

DAVISON, J.—The appellees, in right of *Emily Rodman,* formerly *Emily Blair,* but now the wife of *Israel Rodman,* sued *Gatling,* the appellant, for the undivided one-fourth of lots five and eight in the town of *Lebanon.* The complaint states that they are the owners in fee of the property in suit; alleges that it is wrongfully in *Gatling's* possession; and claims a judgment, &c.

The answer denies the ownership set up in the complaint, assumes the form of a counter-claim, and avers—

1. That *Gatling* holds the legal title to the lots, having bought them of one *James Workman,* in good faith, at full value, and received from him a deed in fee, under which, on the 18th of *February,* 1851, he obtained possession; and that *Workman,* when he conveyed, held title from one *Henry M. Spencer,* dated *April* 19th, 1850. That while in possession of the lots, he, *Workman,* made improvements thereon worth 600 dollars. That *Gatling,* since his purchase, has improved them to the value of 1,000 dollars. It is averred that *Gatling,* when he bought the lots, was wholly uninformed of the adverse claim of *Israel* and *Emily Rodman,* which want of information respecting their title was then well known to them.

2. That the appellees, with intent to defraud *Gatling,* confederated with the said *Spencer,* and concealed their

title to the lots until he had left the state, and until *Work-man* had made valuable improvements on them, and continued so to conceal their title up until the commencement of this suit, &c.

The reply is a direct denial of the answer.

There was a verdict and judgment for the plaintiffs.

It appears that one *James Blair*, in the year 1832, died seized of a sixty acre tract of land, adjoining the town of *Lebanon*, leaving four children and heirs, viz., *James G.*, *Josephus*, *Leander* and *Emily Blair*, the latter being the wife of *Rodman* and one of the appellees. In *February*, 1848, the said *James G.*, *Josephus* and *Leander* conveyed their title to that tract to the said *Spencer*, who, in that year, laid it off in lots, as an addition to said town. The lots in controversy are within that addition. *James Blair* died intestate. *Emily* was born in the year 1828; and after the death of her father she resided with her mother until the 20th of *November*, 1845, when she married *Rodman.*

There is a bill of exceptions, wherein it is shown that, in support of his answer, the defendant offered to prove by *James Richey*, a witness, 1. That the plaintiffs were residents of *Lebanon;* knew that the whole sixty acre tract had been laid off in lots, as an addition to said town; that a plat thereof had been recorded, and that persons were daily buying lots in said addition and improving them, under the belief that the title thereto was valid. That when the lots in contest were sold to the defendant, the plaintiffs were fully cognizant of their own claim of title, which title, they well knew, was wholly unknown to him or his vendor. That they *stood by* and saw the defendant making improvements on the lots, without giving him any notice whatever of their claim, when they knew he was ignorant of it. 2. That a secret understanding existed between *Spencer*, the proprietor of said addition, and *Israel Rodman*, the husband of *Emily*, to conceal all knowledge of the plaintiff's claim until the sale of all the lots embraced in the addition was completed.

An objection to the introduction of this evidence was

sustained, and the defendant thereupon reserved the question of law thus decided.

That *Emily Rodman* derived title to the premises in dispute by descent from her father, *James Blair*, deceased, is not denied; nor is it assumed that she made any false representations respecting her right of property; but it is insisted that the proposed evidence was admissible, because its effect would have been to estop the plaintiffs from asserting their claim.

The record does not profess to set out all the evidence in the cause. It is not, therefore, competent for us to determine whether, if the Court had ruled otherwise, the verdict should have been different. The only inquiries proper for our consideration relate exclusively to the reserved question.

The first branch of the rejected evidence should have been admitted. It was pertinent to the defence, and presented facts conducing to prove that the plaintiffs had been guilty of a fraudulent concealment of their title. If, when the defendant bought and improved the lots, *Emily* and her husband were both fully apprised of their rights, which were unknown to him, and they, at the time, knew of such want of knowledge on his part, but stood by and suffered him to improve the property, under the belief that his title was valid, they were guilty of a fraud, and have no right to invoke the aid of a Court of justice, because the law extends no favors to a fraudulent party.

Upon this subject, Mr. *Story* thus states the law: "If a man having a title to an estate which is offered for sale, and, knowing his title, stands by and encourages the sale, or does not forbid it, and thereby another person is induced to purchase the estate, under the supposition that the title is good, the former so standing by and being silent shall be bound by the sale; and neither he nor his privies shall be at liberty to dispute the purchase." 1 Story Eq. Jur., s. 185. This principle is sustained by various adjudications upon the point now under consideration. *Wendell* v. *Van Rensellaer*, 1 Johns. Ch. 344.— *Storrs* v. *Barker*, 6 *id.* 166.—*Hartman* v. *Kendall*, 4 Ind. R. 403. In the last case,

the Court ruled "that if a party, even an infant of years of understanding, claiming a secret title to land, stand by and see it sold or see another expend money upon it, in the belief that there is no such secret title, and the party claiming knows that the money is so being expended, he may be estopped to assert such title." The phrase "standing by," used in the above authorities, does not import an actual presence, " but implies knowledge under such circumstances as render it the duty of the possessor to communicate it." *The State* v. *Holloway*, 8 Blackf. 45.

When these sales took place and the improvements were made, *Emily Rodman*, it is true, was a married woman; but that relation would not excuse her from the ordinary duty of disclosing her title, when good faith required that it should not remain concealed. " Cases of this sort are viewed by Courts with so much disfavor, that neither infancy nor coverture will constitute an excuse for the party guilty of such fraudulent concealment; for neither infants nor femes covert are allowed the privilege of practising deceptions on innocent persons." Sugden on Vendors, 121.—1 Story Eq. Jur., s. 385. These principles, however, do not apply where a party having the adverse claim is not apprised of his rights, or where the purchaser knows them to exist; because, in that case, there can be no concealment, nor could the title be deemed secret; but the evidence under discussion assumes the ground that the plaintiffs concealed their title, and also that the defendant, when he purchased and improved the lots, was wholly ignorant of its existence. The first point in the proposed evidence was therefore admissible.

But we have seen that the defendant, by the same witness, offered to prove "that a secret understanding existed between *Spencer* and *Rodman* to conceal all knowledge of the plaintiff's claim until the sale of all the lots in the addition was completed." As *Emily* was the real claimant, we think it was not competent for the defendant to set up in his defence any fraudulent combination against his rights to which she was not a party. The premises were her separate estate, and she is not to be estopped

from asserting her claim to them on account of a fraud committed by her husband, unless, indeed, it be further shown that she participated in his deceitful conduct. To this branch of the evidence the plaintiffs' objection was correctly sustained.

*Per Curiam.*— The judgment is reversed with costs. Cause remanded, &c.

*O. S. Hamilton*, for the appellant.

*J. E. McDonald* and *S. C. Willson*, for the appellees.