## FLETCHER *v.* HOLMES.

JUDGMENT BY AGREEMENT.—A judgment entered by agreement, by a court of general jurisdiction, having power in a proper case to render such a judgment, and having the parties before it, will bind those by whose agreement it is entered, notwithstanding the pleadings would not, in a contested case, authorize such a judgment.

SAME.—In a suit for the foreclosure of a mortgage which is not accompanied by any agreement in writing by the mortgagor to pay the debt, the relief is confined to the mortgaged property. But if the defendant appears to the action and consents that a personal judgment may be rendered, the judgment is valid.

JUDGMENT OF FORECLOSURE.—LIEN ON OTHER LANDS.—Whenever in a proceeding for the foreclosure of a mortgage the plaintiff is entitled to a personal judgment, and an order is made under the statute that after the sale of the mortgaged premises, the residue of the judgment remaining

unpaid shall be levied of other property of the mortgagor, the judgment is, from the date of its rendition, a lien on all other lands of the mortgagor in the county.

JUNIOR INCUMBRANCER.—REDEMPTION.—The right of a junior incumbrancer to redeem a prior incumbrance cannot be resisted on the ground that he has other sufficient securities for his debt.

SAME.—PLEADING.—In a proceeding by A against B and others for the foreclosure of a mortgage, C, who had a judgment against B, was made a party defendant. The complaint alleged that the judgment of C was upon the foreclosure of a mortgage upon other lands, and did not affect any of the lands mortgaged to A.

*Held*, that the averment as to the lien of C's judgment was not the averment of a fact but of a conclusion of law, which could not be deduced from the facts averred, and which, if a fact, was wholly immaterial, and hence was not admitted by a default.

CROSS PLEADINGS.—As our statute conferring power upon the courts to determine the rights of the parties on each side of a case, as between themselves, does not prescribe the mode of procedure, the rules of practice in the courts of chancery, modified by the spirit of the code, must be resorted to.

SAME.—Under the chancery practice, when a defendant sought relief against a co-defendant as to matters not apparent upon the face of the original bill, he must file his cross-bill, making parties thereto such of his co-defendants and others as was necessary to the relief sought, and process was necessary to bring them in.

ESTOPPEL.—The doctrine of estoppel *in pais* can have no application in a case where everything was equally known to both parties, or where the party sought to be estopped was ignorant of the facts out of which his rights sprung, or where the party asserting the estoppel was in no degree influenced by the acts or admissions pleaded in estoppel.

SAME.—Estoppels *in pais*, unlike technical estoppels by deed or matter of record, never exist without reference to the moral qualities of the conduct alleged. The door is shut against asserting a right where that would result in doing a wrong to some other person, or where in good conscience and honest dealing a party ought not to be permitted to gainsay his previous conduct.

SAME.—A mere failure to give notice of a right where another, without knowledge of the fact, is investing his money, and where it might be fairly concluded that he would not do so if informed of the fact, will generally preclude a subsequent setting up of the right thus concealed.

SHERIFF'S SALE.—APPRAISEMENT.—A sale on execution without appraisement, where the law requires an appraisement, is void.

APPEAL from the *Marion* Circuit Court.

FRAZER, C. J.—The appellant was the plaintiff below. The complaint alleged that he was the owner by assignment,

made *November* 28, 1855, of a judgment for $6,960 63, rendered in favor of the *Peru and Indianapolis Railroad Company* against one *Allen May*, on the 22d day of *November*, 1855, which was a lien on certain real estate of *May's*, and unpaid except the sum of $950; that one *Pugh* held a mortgage on the same lands, executed by *May*, constituting a prior lien thereon; that on the 8th of *July*, 1857, *Pugh*, by judgment of the *Marion* Circuit Court, foreclosed his mortgage and recovered judgment against *May* for $12,165; that the plaintiff was made a party to *Pugh's* suit; that *Drake* and *Bright* were also made parties to it; that *Pugh's* judgment declares that *Drake* and *Bright* held a lien upon the lands, next to that of *Pugh*, for $45,651 50, and directs that the proceeds of the sale of the mortgaged lands, after satisfying *Pugh's* claim, be applied upon *Bright* and *Drake's*; that the plaintiff is not bound by that judgment in favor of *Bright* and *Drake*, because they filed no allegations against him, did not take any rule against him to answer their claim, nor did they default him, and that the judgment of priority in their behalf was false and fraudulent, their claim being, in fact, by virtue of a mortgage dated one month later than the plaintiff's judgment. It is further averred that *Pugh* assigned his judgment to *Holmes* on the 29th of *March*, 1858, and that the plaintiffs, on the 9th of *May*, 1862, tendered to the attorneys of *Holmes* the amount due upon the *Pugh* judgment, $17,140, requesting them to advise *Holmes* to assign this judgment to the plaintiffs, but that the tender was refused; that the plaintiff is ready and willing to pay whatever sum is required to redeem the lands from that judgment, and a judgment in favor of one *Bowers*, on which the land was sold, and brings the sum into court for the benefit of *Holmes;* that *May* died insolvent, and there is no administrator upon his estate, and that *Holmes* is about to have the lands sold upon his judgment, *Bright* and *Drake* claiming priority over the plaintiff as to the surplus, the lands being of a value greatly in excess of the *Pugh* judgment, so that a large surplus will probably remain. The

complaint concluded with a prayer for an injunction upon the anticipated sale, and that the plaintiff be allowed to redeem, and that he be subrogated to the rights of *Pugh* and *Holmes*, and that the latter assign to him the *Pugh* judgment and release to him all the rights acquired under the sale on the *Bowers* judgment, and that *Bright* and *Drake* be also enjoined, &c. Afterward a supplemental complaint was filed, alleging that after the suit was commenced *Holmes* did cause the sheriff to sell the lands upon the *Pugh* judgment, and became the purchaser thereof and received a sheriff's deed therefor, concluding with a prayer that he be decreed to convey the same to the plaintiff. A transcript of the record in *Pugh's* foreclosure suit is made part of the complaint, by which it further appears that *Fletcher* was made a defendant by *Pugh* to his complaint, and it was alleged therein that the judgment held by *Fletcher* was upon a foreclosure of a mortgage upon other lands, and did "not affect any of the lands mortgaged to *Pugh.*" *Bright* and *Drake* answered *Pugh's* complaint by a denial of *May's* indebtedness to *Pugh*, on the 8th of *May*, 1857, and *Fletcher* was defaulted. Six days later, *Bright* and *Drake* filed a further answer, setting up their mortgage, and claiming that it had priority over all other liens not paid, and that they had paid off all prior liens for *May*. This answer concluded with a prayer that after satisfying *Pugh's* claim, the proceeds should be decreed to be paid to them. On the 10th of *June* the default against *Fletcher* was set aside, and the record proceeds to say that "thereupon the plaintiff amends his complaint as to said *Fletcher*, and he is ruled to answer," &c. No such amendment, however, appears, and *Fletcher*, failing to answer, was again defaulted.

A transcript of the whole record of the cause in which the plaintiff's judgment was rendered, and the subsequent proceedings under it, was also filed with the complaint and made a part of it, by which it appears that it was an ordinary judgment of foreclosure of a mortgage upon certain real estate, with the usual statutory *addendum*, that if any

part of the amount should remain unsatisfied, after applying the proceeds of the sale of the mortgaged premises, such balance should be levied of the other property of *May*. This judgment was rendered by agreement, there being in the mortgage no covenant to pay the debt, and it not appearing by the mortgage itself, or otherwise, whether the mortgagor had executed any note or obligation for the amount secured, or whether he was in any manner personally liable for the debt, otherwise than out of the property mortgaged. It also appears from that exhibit that, on the 21st of *February*, 1857, the sheriff duly exposed the mortgaged premises to sale to satisfy that judgment, and struck the same off to one *George Bright* for $7,687 24; that *Bright* failed to pay his bid, and that subsequently *Fletcher* bid off those lands for $950 and received a deed. A demurrer to the complaint by *Holmes* was overruled, and by a cross-error he questions this ruling.

It is insisted, 1. That, in any event, the plaintiff's judgment was not a lien upon the lands now in controversy, and that it could only become such by a levy upon them after having exhausted the lands mortgaged to satisfy it, and which were, by the judgment, ordered to be sold for that purpose. 2. That as there was no express agreement in writing by *May* to pay the money secured by the mortgage the plaintiff's remedy was confined to the mortgaged property, and any further judgment against *May* personally was in excess of the authority of the court, and therefore void as to third parties. If either of these propositions be correct, then *Fletcher* had no lien and consequently no right to redeem, and the demurrer to the complaint should have been sustained and his case ended at the threshold.

Was the order, made by agreement, that the balance of the debt remaining unpaid, after selling the mortgaged land, should be levied of the other property of *May*, in excess of the authority of the court?

It cannot be doubted that, without *May's* consent, such a

judgment against him, upon that complaint, would not have been warranted. We need not say whether or not it would have been void. But he consented to it. Was it then void as against *May* because the complaint did not allege sufficient facts to justify it without such consent?

We can conceive of no reason why a judgment entered by agreement, by a court of general jurisdiction, having power in a proper case to render such a judgment, and having the parties before it, should not bind those by whose agreement it is entered, notwithstanding the pleadings would not, in a contested case, authorize such a judgment. The object of a complaint is to inform the defendant of the nature of the plaintiff's case. It is for his protection that it is required. If he wishes to waive it, or agrees to the granting of greater relief than could otherwise be given under its averments, without amendment, and such relief is given by his consent, we think that the judgment is not even erroneous, much less void, as to him. If a valid judgment then against *May*, we know not upon what principle of law or justice subsequent incumbrancers can question it, in the case before us.

Is such a judgment a lien upon other real estate than that which it directs to be sold?

At common law, a party holding a note secured by mortgage might obtain his judgment at law, which would, under our statute, be a lien upon other real estate, and thus he could acquire additional security. He could also concurrently pursue his remedy in chancery against the mortgaged premises. Our statute, 2 G. & H., pp. 294–5, provides, in cases where the plaintiff obtains a foreclosure and is also entitled to a personal judgment, that an order shall be entered which has all the effect of a judgment in *personam*, except that execution shall not be levied until the property mortgaged shall be exhausted. The object of this statute was to save the necessity of two actions to secure and make the same debt, and we think that the legislative intention would be in part defeated, by holding that such

a judgment is not, by force of its rendition, as perfect a lien upon all the debtors real estate as an ordinary personal judgment. It seems to us, also, that such a ruling would violate the express letter of section 527 of the same statute, which enacts that "all final judgments in the Circuit Courts and Courts of Common Pleas for the recovery of money or costs shall be a lien upon real estate liable to execution in the county." 2 G. & H., 264.

The fact that the real estate mortgaged to secure this debt of *Fletcher's* was first bid off by *George Bright*, for $7,687 24, at a sheriff's sale, apparently regular, and his failure to pay his bid, is urged as a bar to *Fletcher's* right to redeem, inasmuch as he had a complete remedy against *Bright*, and no reason is alleged for not pursuing it. This argument cannot be sound unless a junior incumbrancer has no right to redeem a prior incumbrance until he exhausts such apparently ample securities as he holds, other than lands thus subject to senior liens. We do not understand that the right is thus limited, nor does justice require that it should be. The senior incumbrancer has no right to more than the payment of the sum secured by his incumbrance, and such payment can do no possible injury to his just rights. Nor can the junior incumbrancer obtain any unjust advantage over the debtor by being subrogated to the rights of the previous incumbrancer. He merely protects himself without injuring any one. It would be an extraordinary doctrine in equity, that the right to redeem is postponed until he shall prosecute a law suit of unknown duration against a third party, and, by the exhibition of its fruits, show that loss will accrue to him unless he shall be permitted to redeem, the prior incumbrancer being at liberty in the mean time to sell the incumbered property under the hammer when he chooses, and thus put it out of the reach of the junior mortgagee. No authority is cited which, in the remotest degree, supports such a doctrine, and we presume that none such exists. If *Holmes* was related to *Fletcher's* claim as a surety for *May*, then undoubtedly

the relinquishment by *Fletcher* of any security held by him which could conduce to the safety or indemnity of *Holmes*, would be, *pro tanto*, a discharge of the latter. But such is not his character, as the case was made by the complaint.

The appellee also assigns for cross-error the sustaining of a demurrer to the fourth paragraph of his answer, which was that the supposed tender was insufficient, in this: that the defendant, at the date of the tender, was and is still the owner of the judgment in favor of said *Drake* and *Bright* for the sum of $45,651 50, by assignment; that it was ex-- pressly declared to have priority to the lien of the appellant's judgment, and that the appellant was a party to said judg- ment, and that said judgment was due and unpaid at the time of said tender.

The question thus presented for our consideration is whether *Fletcher* was bound by the decree declaring the lien of *Bright* and *Drake's* mortgage to have priority over all other liens except *Pugh's*.

*Fletcher* was a party to *Pugh's* complaint, but did not ap- pear, and was defaulted before *Bright* and *Drake* filed their claim of priority. We may put out of the case the errone- ous view of the law expressed in *Pugh's* complaint, that *Fletcher's* judgment was not a lien upon the lands embraced in *Pugh's* mortgage. It was not an averment of a fact, but of a conclusion of law which could not be deduced from the facts alleged by *Pugh* in his complaint, and which was wholly immaterial to *Pugh's* case, and therefore, even if a fact, not admitted by a default.

The statute expressly confers power to determine the rights of the parties on each side of a case as between themselves, when the justice of the case requires it. 2 G. & H., § 368, p. 218. The mode of procedure, however, is not pointed out by the statute, and as the authority given is one previously possessed only by courts of chancery, we suppose the rules of pleading and practice of those courts, modified by the spirit of the code, must be resorted to. 2 G. & H., § 802, p. 336. In those courts, when a defendant

sought relief against a co-defendant, as to matters not apparent upon the face of the original bill, he must file his cross-bill, alleging therein the matters upon which he relied for relief, making defendants thereto of such co-defendants and others as was proper, and process was necessary to bring them in. The filing of the cross-bill was regarded in some sense as the commencement of a new suit. It was upon this principle that this court proceeded in *Meredith* v. *Lackey*, 16 Ind. 1, though, in that case, an appearance by *Meredith* to the cross complaint of *Peele* waived the necessity of process. It must be quite obvious that the application of the rule of chancery practice to a case like the one under consideration is well adapted to prevent abuses, and is indeed absolutely necessary to the purposes of justice. The principle is indeed fundamental, that a party shall not be bound by adversary proceedings without notice and an opportunity to be heard.

*Holmes* answered in nine paragraphs, those to which demurrers were not sustained being:

1. A general denial.

2. That on the 18th day of *December*, 1857, he purchased the land described in the complaint of *Allen May* and *George M. Bright*, under the advice of the appellant, who represented that it was a safe and judicious purchase, and a good investment of his money; that he had no notice of the appellant's lien and claim; that the appellant stood by and knew of the purchase, and did not inform him that he had any lien or claim upon said real estate; that the defendant, relying upon his title, has made valuable and lasting improvements, to the amount of $20,000, and that the appellant stood by and knew of the making of the improvements, and their value, and did not give the defendant any notice that he had any claim to or lien on the land until he made the claim and tender mentioned in the complaint. Wherefore the appellant is estopped from setting up his claim against the defendant.

3. That after the rendition of the judgment on the 8th

day of *July*, 1857, for the sum of $12,165 in favor of said *Pugh*, and the further sum of $45,651 50, and costs, in favor of said *Bright* and *Drake*, against said *May*, and the judgment postponing the appellant's judgment and decree, and giving priority over it to said two judgments, the defendant negotiated with said *Pugh*, *Bright* and *Drake* to buy said judgments, as a means of acquiring title to said land, and purchased them; that while the negotiations were pending, the appellant knew the defendant's intentions, and advised with him as to the manner of proceeding in the purchase of said land, and assured him that the proposed investment was a safe and judicious one, and desired and advised him to purchase said land, and that the defendant entered into the possession of the land under his purchase, and made lasting and valuable improvements, of the value of $20,000, and was encouraged to do so by said *Fletcher*, who stood by and never set up any claim of a lien on said land until the claim and tender set up in the complaint. Wherefore the appellant is estopped from setting up the judgment in favor of the railroad company as prior to that of *Bright* and *Drake*.

6. That on the 29th day of *May*, 1855, in the Circuit Court of the *United States* for the District of *Indiana*, *Charles Bowers* recovered a judgment against said *May* for the sum of $1,779; that an execution was issued, and that on the 1st day of *October*, 1856, the real estate was sold at marshal's sale to *James P. Drake* for $820; that the bid was assigned to *George M. Bright*, to whom the marshal's deed was made, who conveyed the same to said *Holmes*.

7. That the judgment of the appellant was fully paid before the commencement of the suit.

8. That the railroad judgment was assigned to the appellant as collateral security, and that before the tender and the commencement of the suit the company had paid the debt, to secure which the assignment had been made. Wherefore the plaintiff has no interest in the suit.

The plaintiff demurred unsuccessfully to the second, third and sixth paragraphs of the answer, and then replied as follows: to the second, third, sixth, seventh and eighth, a general denial. To the sixth a further reply in four paragraphs:

1. There is no record of any such judgment as that described, in favor of *Bowers* and against *May*.

2. That the alleged judgment of *Bowers* against *May* was and is void, because it was rendered by virtue of a pretended warrant of attorney executed by said *May*, without an affidavit by said *May* that the debt was just and owing, and that the confession was not made to cheat and defraud his creditors.

3. That the supposed judgment against said *May*, in favor of said *Bowers*, was founded on a bill of exchange, on which *May* was indorser, and the action was to enforce that liability; that neither by the terms of the bill nor the indorsement was it agreed that the money should be paid without relief from the valuation laws, nor was it ordered, declared or directed by the court that the judgment should be executed without relief. That the lands were sold and struck off by the marshal without any appraisement, and the deed wrongfully executed to said *Bright*. Wherefore the sale and deed are void, and the deed of *Bright* to *Holmes* is also void.

4. That the Circuit Court of the *United States* for the District of *Indiana*, on the 11th day of *May*, 1844, by a rule of court adopted the provisions of article 13, part 3, of R. S. 1843, relating to the appraisement and sale of real estate on execution, and on the 17th day of *May*, 1856, by another rule, adopted the 405th and 406th sections of the 22d article of the 1st chapter, of the 2d part of R. S. 1852, with substantially the same averments as in the third paragraph of the reply, and the additional averment that the tender included the principal, interest and costs of said judgment.

A jury trial resulted in a general verdict for the defendant.

Fletcher v. Holmes.

The sufficiency of the second and third paragraphs of the answer may be considered together, as the questions arising upon both are much the same. They aver matter by way of estoppel *in pais*—that the plaintiff stood by and encouraged the defendant to invest his money in the purchase and improvement of the land, and did not give notice of his claim upon it. It is not averred in the third paragraph that the defendant had not full knowledge of the existence of the plaintiff's claim and of his rights under it, nor that the defendant was, in any degree, influenced to act by the conduct of the plaintiff.

The doctrine of estoppel *in pais* rests upon a reasonable and just foundation. For the prevention of fraud, the law will hold a party to be concluded by his own act or admission. Surely this can have no application where everything was equally known to both parties, or where the party sought to be estopped was ignorant of the facts out of which his rights sprung, or where the party seeking to conclude him was in no degree influenced by the acts or admissions which are set up. Estoppels *in pais*, unlike technical estoppels by deed or matter of record, never exist without reference to the moral qualities of the conduct alleged. The door is shut against asserting a right when that would result in doing an injury, by the party asserting it, to some other person, or when, "in good conscience and honest dealing he ought not to be permitted to gainsay" his previous conduct. Nelson, J., in *Welland Canal Company* v. *Hathaway*, 8 Wend. 482. The general doctrine upon the subject is admirably stated by Bronson, J., in *Delzell* v. *Odell*, 3 Hill 215. Indeed, in the same case, Cowan J., went to the extent of saying that there was "a clear case of an admission by the defendant, intended to influence the conduct of the man with whom he was dealing, and actually leading him into a line of conduct which was prejudicial to his interests, unless the defendant be cut off from the power of retraction. This I understand to be the very definition of

an estoppel *in pais.*" Though this definition may possibly be too narrow for all cases, it forcibly states what we regard as the well settled law applicable to the case in judgment. *Gatling* v. *Rodman*, 6 Ind. 289; *Junction R. R. Co.* v. *Harpold*, 19 *id.*, 347; *Peck* v. *Hensley*, 21 Ind. 344; 1 Story's Eq., § 384—394. A mere failure to give notice of a right, where another, without knowledge of the facts, is investing his money, and where it may be fairly concluded that he would not do so if informed of the facts, will generally preclude a subsequent setting up of the claim thus concealed. But such a case is not made by the pleadings now under consideration. Omitting to aver that the defendant was influenced by the plaintiff's conduct, or, in the third, that he had no knowledge of the facts as they really existed, the second and third paragraphs of the answer did not aver enough to constitute a valid estoppel *in pais*, and the court therefore erred in overruling the demurrers to them. "Every estoppel, because it concludeth a man to allege the truth, must be certain to every intent, and not be taken by argument or inference." Co. Lit. 352, *b*. The court in giving and refusing to give instructions to the jury carried the same incorrect view of the law thoughout the case, and the evidence as to the estoppel proceeded but little, if any, beyond the averments of the answer, and from an examination of the whole record we deem it not improbable that the case was determined upon the estoppel.

We have stated the nature of the issues formed upon the sixth paragraph of the answer. The evidence fully sustained the averments of fact in the third paragraph of the reply thereto. It also appeared that the *Bowers* judgment was rendered against *May* upon an indorsement by him of a bill of exchange drawn by the *Farmers' and Mechanics' Bank of Indianapolis*, upon *F. P. James & Co.*, of *New York*, payable to *Bowers*, thirty days after its date. The indorsement was made after the maturity and protest of the bill, and in consideration of *May's* liability as the owner of the bank which drew it.

The appellant requested the court to give the following instruction:.

"If in the judgment in the suit of *Bowers* against *Allen May*, in the *United States* Circuit Court, it was not ordered that the same should be executed without any relief from valuation or appraisement laws, and the sale under it was made without appraisement, the sale is void, and a title through or under such sale is void, and constitutes no defense to this suit."

The court refused to give the instruction as asked, and gave the jury the following instruction:

"If in the judgment, or in the execution, in the suit of *Bowers* v. *Allen May*, in the *United States* Circuit Court, it was not ordered that the same should be executed without any relief from valuation or appraisement laws, and the sale under it was made without appraisement, the sale is void, unless the judgment was founded on one of the statutory exceptions, and a title through or under such sale is void, and constitutes no defense to this suit. But in such case the judgment in the *United States* Circuit Court remains unpaid and in full force, and so much of it as that sale brought inures to the benefit of the defendant, by virtue of the purchase of the land. A sale on execution made without appraisement, under the act of 1843, is void, unless the judgment and execution were against officers of the state, county or township, or against executors, administrators, guardians, attorneys, etc., and it would seem that he who attacks for invalidity a sheriff's sale, on account of the want of appraisement, should show that it was such a case as required appraisement. Presumptions are in favor of the acts of officers."

The question arising upon this action of the court is not discussed in the careful and able brief which has been presented for the appellee. The doctrine that a sale on execution without appraisement is void, where the law requires an appraisement, is too thoroughly settled in this State to justify any discussion of it.

It appears that the *United States* Circuit Court, in which the *Bowers* judgment was rendered, had by rule of court adopted the provisions of article 13, part 3, of the Revised Statutes of 1843, so far as the same relates to the appraisement and sale of real estate on execution.    By section 408 of that article, (R. S., 1843, p. 748,) certain cases are specified in which there shall be no appraisement of property before sale on execution.    They are sales of property of any state, county or township officers, or executors, administrators or guardians and their sureties, on executions upon judgments obtained against them as such; sales on execution against attorneys and counsellors at law, for failing to pay over money collected by them as such, or against any bank, savings institution, or insurance office, or judgments upon forfeited delivery bonds.    It was clear from the transcript of the record of the case of *Bowers* v. *May*, which was in evidence, that that judgment was not one of the cases excepted from the operation of the appraisement laws of 1843, and the court should have told the jury so.    The instruction, as given, left the effect of the transcript as evidence upon that subject to the jury, whereas it was the duty of the court to construe it.

A number of other questions are argued by counsel, but it is not necessary to extend this opinion by considering all of them.    A single one yet remains upon which the parties may reasonably expect our opinion.    It is as to the sufficiency of the tender.

The *Bowers* judgment was an older lien than the plaintiff's.    In strict law it was discharged by money realized from a sale on execution of the lands now in dispute for $500, together with other lands which sold for $895 84, the total being $1,395 84, and covering the judgment, interest and costs.

The tender was specific, $15,940 upon the judgment of foreclosure held by *Holmes*, and $1,200 upon money paid for this land at the marshal's sale to satisfy the *Bowers* judgment.    The first mentioned sum exceeded the judgment which it was intended to cover by about $80, com-

puting interest from the date of that judgment, and adding costs. That was sufficient. The sum of $1,200 greatly exceeded the purchase money paid for the land at the marshal's sale, computing interest from the day of sale, and was therefore sufficient. We need not determine whether any tender was required as to the latter item, as the plaintiff, having made it and brought the money into court, has avoided that question.

The judgment is reversed, with costs, and the cause remanded, with instructions to sustain the demurrers to the second and third paragraphs of the answer of *Holmes*, and to proceed according to this opinion.

RAY, J., was absent.

*J. Caven, J. Morrison, T. A. Hendricks, S. E. Perkins, O. B. Hord* and *A. W. Hendricks*, for appellant.

*J. D. Howland, L. Barbour, J. T. Jackson, A. G. Porter, B. Harrison* and *W. P. Fishback*, for appellee.