Behler *et ux. v.* Weyburn,

---

## BEHLER ET UX. *v.* WEYBURN.

MARRIED WOMAN.—*Estoppel in Pais.*—Under the provisions of section 5 of "An act touching the marriage relation," etc., 1 R. S. 1876, p. 550, a wife has no power to encumber or convey her lands otherwise than by deed, in which her husband shall join. Under such statute, the courts can not say that a married woman may divest herself of the title to her lands by an estoppel *in pais. Gatling* v. *Rodman,* 6 Ind. 289, and cases following it, overruled.

EVIDENCE.—The owner of a lot subdivided it into three equal parts, each of which was supposed to contain twenty-two feet, but in fact contained a little more than that amount. The north part, with seven inches off of the north side of the middle third, was conveyed to a third party. The south third was also conveyed away. In an action by the owner of the middle third, involving the location of the southern boundary line thereof, the deed conveying the northern part was offered and admitted in evidence, in behalf of the defendant, with reference to locating said southern boundary.

*Held,* that this was error. The northern boundary line was not in controversy; the owner of the southern third was not a party to the instrument. If the owner of the middle part gained a foot by the settlement of the northern boundary, she could not thereby be deprived of holding to her true southern boundary, although she might thereby hold more land than one-third of the original lot.

From the Elkhart Circuit Court.

*R. M. Johnson* and *J. D. Osborn,* for appellants.

*J. H. Baker* and *J. A. S. Mitchell,* for appellee.

WORDEN, J.—Action by the appellants, against the appellee, to recover certain real estate on behalf of Margaret, wife of Peter Behler.

Issue; trial by jury; verdict and judgment for defendant.

The controversy had reference to the locality of the division line between the premises of the parties.

The court gave to the jury the following charge, to which the plaintiffs excepted, viz.:

" 8th. If you find, that the plaintiff knew that the strip of land in dispute belonged to her, and she also knew that the defendant was ignorant of her right or title to the same, and that she stood by and knew that the defendant was erecting valuable improvements upon said premises, in good faith and under the belief that the same belonged to him, and she did not disclose her claims to him, then she is estopped now to claim the land, although she was a married woman at the time."

We are of opinion, that this charge, in view of some statutory provisions which will be noticed, was erroneous. In the act concerning real property and the alienation thereof, it is provided, that " The joint deed of the husband and wife shall be sufficient to convey and pass the lands of the wife, but not to bind her to any covenant therein." 1 R. S. 1876, p. 363, sec. 6. In the act touching the marriage relation and liabilities incident thereto, it is enacted, that " No lands of any married woman shall be liable for the debts of her husband; but such lands and the profits therefrom, shall be her separate property, as fully as if she was unmarried; *Provided,* That such wife shall have no power to incumber or convey such lands, except by deed, in which her husband shall join." 1 R. S. 1876, p. 550, sec. 5.

It is thus seen, that a wife has no power to encumber or convey her lands otherwise than by deed, in which her

husband shall join. Under such a statute, the courts can not, as we think, say that a married woman may divest herself of the title to her land by an estoppel *in pais*. That would be overturning the statute, which prohibits all modes of encumbering or conveying her land save the one provided for. The same question was involved in the case of *Lowell* v. *Daniels*, 2 Gray, 161, in which the opinion so well expresses our views that we make the following quotation from it. The court said:

" This raises the material question at issue between the parties whether a married woman and her heirs may be barred of her estate by an estoppel *in pais*. She can make no valid contract in relation to her estate. Her separate deed of it is absolutely void; any covenants in such separate deed would be likewise void. If she were to covenant that she was sole, was seized in her own right, and had full power to convey, such covenants would avail the grantee nothing. She could neither be sued upon them, nor estopped by them. The law has rendered her incapable of such a contract, and she finds in her incapacity her protection; her safety in her weakness. * * * And we think a married woman can not do indirectly what she can not do directly; can not do by acts *in pais* what she can not do by deed; can not do wrongfully what she can not do rightfully. She can not by her own act enlarge her legal capacity to convey an estate.

" This doctrine of estoppel *in pais* would seem to be stated broadly enough, when it is said that such estoppel is as effectual as the deed of the party. To say that one may, by acts in the country, by admission, by concealment or by silence, in effect do what could not be done by deed, would be practically to dispense with all the limitations the law has imposed upon the capacity of infants or married women to alienate their estates. * * *

"No case at law has been cited, nor have we found one, in which it has been held that the estate of a party has been

barred by an estoppel *in pais*, who was incapable of conveying by deed. And though the courts have liberally applied the doctrine of estoppel *in pais* to cases of personal property, in the transfer of which no technical formalities intervene to prevent its application, we know of no case in which it has been applied to a party incapable in law of making a contract."

So, also, in the case of *Todd* v. *The Pittsburg, Fort Wayne and Chicago R. R. Co.*, 19 O. S. 514, the court said in reference to a similar question :

" During her coverture she had no power to bind herself by contract. No agreement of hers for the conveyance or encumbrance of her real estate, however solemnly entered into, could be enforced by a decree for specific performance. She could only dispose of or encumber it in the mode prescribed by the statute.        *        *        *

" And what she could not deprive herself of by direct and express contract with the defendant, we think it clear that she could not lose by the indirect method of an estoppel *in pais*, arising from facts such as those found in this case." See, also, the case of *Glidden* v. *Strupler*, 52 Pa. St. 400.

The case of *Gatling* v. *Rodman*, 6 Ind. 289, has been cited by counsel for the appellee as sustaining the charge ; but the facts of that case appear to have arisen before the passage of the act above cited, touching the marriage relation, etc. ; and that act is not alluded to in the opinion. It is evident that the court did not consider the effect of that act in withholding power from a married woman to encumber or convey her lands except by deed, in which her husband should join.

There are probably other cases in our reports following *Gatling* v. *Rodman, supra*, in which there are *dicta*, and perhaps decisions, at variance with the conclusion arrived at in this case, but so far as they conflict with the decision herein, they must be overruled.

Since this opinion was prepared, our attention has been called to the case of *Hayes* v. *Livingston*, 34 Mich. 384,

which was elaborately considered, and sustains the view we have taken on the question of estoppel.

Objection is made to some other instructions given, but, as the judgment will have to be reversed for the error in giving the charge above set out, and for the reason hereinafter stated, we deem it unnecessary to consider the instructions further.

We proceed to the consideration of a question of evidence.

The controversy is as to the division line of parts of a lot in the city of Goshen. The following diagram will assist in understanding the point arising upon the evidence.

```
            MARKET        N.        STREET.
        +-------------------------------------+
        |                                     |
        |                                     |
        |               137                   |
        |                                     |  M
        |                                     |  A
        |                                     |  I
        +-------------------------------------+  N
        |          N. 1/3 138                 |
      W.+-------------------------------------+  E.
        |          M. 1/3 138    Behler.      |
        +-------------------------------------+
        |          S. 1/3 138    Weyburn.     |  S
        +-------------------------------------+  T
        |                                     |  R
   ALLEY.              139                    |  E
        |                                     |  E
        |                                     |  T.
        +-------------------------------------+
                        S.
```

The three lots, 137, 138 and 139, were each supposed to contain, as originally laid out, sixty-six feet front, but the evidence tends to show, that they altogether overrun that quantity about a foot. Lot 138 was divided into three equal parts, each supposed to contain twenty-two feet front. The middle part of lot 138 is owned by Mrs. Behler, and the south part by Weyburn, and the line between them is the one in controversy. It may be observed, that there seems to be no controversy but that the excess of ground, if any, should be proportionably divided between the several owners.

On the trial of the cause, the defendant offered in evidence a written instrument executed by Behler and his wife and Joseph H. Defrees, the latter of whom then owned the north third of lot 138, by which Behler and wife granted or let to Defrees seven inches off of a part of the north side of the middle third of said lot 138, to be used for a party wall.

The plaintiffs objected to the introduction of this instrument in evidence, on the grounds, amongst others, that it was irrelevant, incompetent and immaterial, but the court overruled the objection, and admitted it in evidence, and the plaintiffs excepted.

We make the following extract from the brief of counsel for the appellee, showing the ground on which they claim that the instrument was properly admitted :

They say :

" It was clearly admissible for two purposes:

" First. To show where the north line of the appellant's ground was, as fixed by the adjoining owners ; and, second. To show just how much ground she was actually occupying.

" It was competent for the appellee to show, by any relevant testimony, where the lines of the appellant's lot were. One item of evidence was the agreement between Taylor, her grantor, and Defrees, fixing that north line. Another item of evidence was the writing in question,

showing that she and her husband had given Defrees a right to the use of seven inches of her ground on the north line of her lot.

"It was then shown by Defrees, that the wall was actually located upon the land so leased to him, and that she was occupying, with her building, up to this line, on one side, and Defrees on the other. The instrument was a valid and binding one between the parties to it, and the objection urged to it by counsel, that it was not acknowledged, is wholly untenable.

"The deed of a married woman is binding upon her without being acknowledged. *Hubble* v. *Wright*, 23 Ind. 322; *Doe* v. *Naylor*, 2 Blackf. 32; *Stevenson* v. *Cloud*, 5 Blackf. 92.

"The instrument constituted a valid, binding grant of seven inches of the appellant's land to Defrees.

"It locates the northern boundary of the middle ⅓ of lot 138, and with the testimony of the engineer, Ager, it establishes the fact that the appellant is actually occupying 22 feet and 6 inches of frontage now.

"It is argued by counsel, that it can make no difference where the northern line of the appellant's lot is; that that does not fix the southern line or boundary between the appellant and appellee.

"But we submit that it does.

"The middle ⅓ of lot 138 is a piece of ground of a certain width. On the theory that the frontage corresponds exactly with the plat, it is 22 feet in the middle, or the middle 22 feet, of lot 138; on the theory contended for, that there is a surplus of frontage of about 12 inches, which is to be divided equally between all the owners of the subdivisions of these lots, then she is entitled to 22 feet 2 inches in the middle ⅓.

"Now, if the boundaries of lot 137 were fixed, as is conceded, by the erection of Barns & Defrees' block in 1845, then the north boundary of lot 138 is also fixed, for

the reason that it adjoins, and must adjoin, the south line of lot 137.

"Defrees testified, that his building occupies over 23 feet of ground—he being the owner of the north ⅓ of lot 138—and his south line was fixed by agreement, both with Taylor and the appellant. The line between Defrees and Taylor was fixed in such a manner that the appellant conceded by the writing in question 7 inches off of the north part of her lot to Defrees.

"If the north line of the middle ⅓ of lot 138 is fixed, then it is simply a matter of measurement to ascertain where the south line should be.

"On the one theory, it would be 22 feet from the north line; on the theory of a surplus, it would be 22 feet and 2 inches from the north line; and on either theory the appellant is actually occupying more than her share of the ground; and upon neither theory is the appellee encroaching upon her ground.

"The testimony of Ager, the surveyor, established the fact, that the appellant is actually occupying 22 feet and 5 or 6 inches of ground, counting the 7 inches leased to Defrees. The same witness shows that the appellee is occupying only 21 feet 10½ inches from outside to outside.

"It must be remembered, too, that it is established by the proof, that there is 1½ to 2 inches between the buildings of the appellant and the appellee.

"It can not be material, however, what the evidence in the whole case would show. The admissibility of the paper depends upon whether it tends to establish any material proposition involved in the case. Two material points in the case were, to show, 1st, how much ground the appellant actually occupied; and, 2d, where the lines of her lot were actually located, either by agreement or by a survey. This instrument was material to both of these points."

We do not concur in the view of the question taken by counsel for the appellee. The question in issue was,

where was the boundary line between the plaintiffs' subdivision of the lot, and the defendant's? In other words, where was the plaintiffs' southern boundary line? Her northern boundary line, or that between her and Defrees, was not in issue. The defendant was no party to the instrument executed between the plaintiffs and Defrees, and could not be bound by it, nor do we see how he could take any advantage of it. Assuming that the instrument, as between the plaintiffs and Defrees, fixed the boundary line between them, that could have no influence whatever in determining the plaintiff's southern boundary line, as between her and the defendant. Suppose, by the instrument in question, the boundary line between the plaintiff and Defrees had been fixed a foot south of the true boundary, whereby Defrees acquired a foot of the plaintiff's land. It is clear in such case, that the plaintiff could not go south beyond her true boundary, and encroach upon the defendant, to make up the foot thus lost. So, on the other hand, if she gained a foot or any other quantity by the settlement of the boundary between her and Defrees, she could not thereby be deprived of the right of holding to her true southern boundary, although she might thereby hold more land than one-third of the lot. If she gained or lost any thing by the settlement of the boundary line between her and Defrees, the gain or loss was her own, and could not enure to the benefit or injury of another.

Whether the instrument in question fixed the true boundary or otherwise between the plaintiffs and Defrees, we do not think the defendant, who was no party to it, could avail himself of it, for the purpose of showing the boundary between the plaintiffs and himself, and therefore we are of opinion that the court erred in admitting it.

The judgment below is reversed, with costs, and the cause remanded for a new trial.