GEORGE A. HOAGLAND ET AL., APPELLANTS, V. JOSEPH C. GREEN ET AL., APPELLEES.

FILED MARCH 3, 1898. No. 7870.

1. **Mortgages: DELIVERY.** It cannot be inferred that a mortgage, although left in the custody of the mortgagee, was delivered as to one of two joint mortgagors upon the signing and acknowledgment by him, when it was the manifest intention of the parties that it should not take effect until execution by the other mortgagor.

2. ———: **JUDGMENTS: PRIORITY.** The general lien of a deficiency judgment rendered not by confession and at a term subsequent to the commencement of the foreclosure suit in which such judgment was rendered is superior to a mortgage or conveyance of the debtor's land executed after the commencement of that term, but before the actual rendition of the judgment.

3. ———: **FORMER LIENS: SUBROGATION.** The mere fact that with the proceeds of a later mortgage a prior one was paid, for the purpose of removing the lien thereof, affords no ground for subrogating the junior mortgagee to the rights of the former mortgagee upon its being discovered that a lien had arisen intermediate between the two mortgages. ·*Bohn Sash & Door Co. v. Case*, 42 Neb. 281, followed.

Hoagland v. Green.

APPEAL from the district court of Douglas county. Heard below before AMBROSE, J.   *Reversed.*

*Warren Switzler*, for appellants.

*G. W. Shields, F. C. O'Hollaren*, and *J. J. O'Connor*, contra.

IRVINE, C.

This was a proceeding in the nature of a creditors' bill to subject certain lots in the city of Omaha to the payment of judgments owned by the appellants against Joseph C. Green.  The district court found for the defendants and dismissed the case.  The plaintiffs appeal.

In 1891 Hoagland and French obtained a decree foreclosing mortgages on other property of Green.  In August, 1892, the mortgaged premises were sold under the decree, leaving a small deficiency on Hoagland's claim and the whole of French's unsatisfied.  The September term of the district court opened September 17, and at that term, on October 1, the sale was confirmed. October 8 both Hoagland and French moved for deficiency judgments, which were rendered November 17, still at the September term of court.  The French judgment was assigned to the appellant Switzler.  At the beginning of the term there was a mortgage on the land in controversy in favor of the Omaha Savings Bank. Subsequently, but before the deficiency judgments were rendered, Green and wife executed three mortgages on the land in controversy, in favor of the Globe Loan & Trust Company.  The loan and trust company paid the savings bank's mortgage and a tax lien on the property out of the loan to secure which its mortgages were made, and paid the remainder of the loan to Green.  After these mortgages were made and recorded, but before the deficiency judgments were rendered, Joseph C. Green conveyed the land to George H. Green.  The ques-

tions presented are whether the judgments are liens binding upon George H. Green, and if so, whether they or the loan and trust company's mortgages have priority.

It is argued that the mortgages were delivered before the term of court opened at which the judgments were rendered and that they are therefore, in any view of the law, superior to the judgments. The facts, as established by uncontradicted evidence, are that arrangements had been made by Green with the loan and trust company for the loan early in September. September 16, the day before the term of court opened, Green came to the office of the company, the mortgages were there drawn, Green signed them and acknowledged them. Several days later Mrs. Green came to the company's office, signed and acknowledged the mortgages, and the notary who took both acknowledgments then certified thereto, dating the certificate as of the day of the wife's acknowledgment. No money was paid by the company until a still later day. From the time of the execution by Green the company retained possession of the instruments. Were the circumstances different the acts of Green in signing and acknowledging and leaving the instruments in the possession of the mortgagee might indicate a delivery on his part on September 16; but when it is considered that the mortgages were drawn by the mortgagee at its office, that the signing and acknowledging both took place there, that the certificates of Green's acknowledgment were not then made out, but evidently purposely withheld until such time as Green's wife might acknowledge, and that no money was paid out until after the latter event occurred, it becomes absolutely certain that the instruments were not deemed complete at the former time, and that they were not intended to then take effect. The bare manual possession by the mortgagee in the interval ceases to be significant. The delivery could not have taken place prior to September 27, when the wife executed the instruments. Section 477 of the Code of Civil Procedure provides: "The lands and tenements of

the debtor within the county where the judgment is entered, shall be bound for the satisfaction thereof from the first day of the term at which judgment is rendered; but judgments by confession, and judgments rendered at the same term at which the action is commenced, shall bind such lands only from the day on which such judgments are rendered. All other lands, as well as goods and chattels of the debtor, shall be bound from the time they shall be seized in execution." After a thorough consideration and exhaustive discussion of the question it was held that where a mortgage is executed and recorded during the term, but before the rendition of such a judgment as is rendered at a term subsequent to that at which the action was commenced and not on confession, the lien of the judgment is superior to the mortgage. (*Norfolk State Bank v. Murphy*, 40 Neb. 735. See also *Ocobock v. Baker*, 52 Neb. 447.) If the judgments here in question were ordinary judgments in personal actions, there could, therefore, be no doubt as to their priority, both as against the mortgages and the rights of George H. Green. But the argument is that the rule applies only by virtue of a legal fiction whereby judgments are deemed to have been rendered at the first day of the term, and that this fiction cannot apply where the case was not then in a situation that judgment might then have been rendered. Further, that at the beginning of this term the sale of the mortgaged premises, in the case in which the judgments were rendered, had not been confirmed, no deficiency had been ascertained, no judgment could then be rendered for a deficiency; and that for this purpose the action should be deemed commenced at the time the application was made for the deficiency judgments. If this theory were sound it would save the rights of the defendants; but we are constrained to hold that it is not sound, much against the inclinations of the writer, at least, to whom the case appeals as one of unusual hardship.

The theory of the defendants receives support in prin-

ciple from the case of *Withers v. Carter*, 4 Gratt. 407, and
one or two later cases in Virginia. But these cases pro-
ceeded on common-law grounds and were not controlled
by statute as is the case before us. In *Norfolk State Bank
v. Murphy, supra,* it is said that our statute is declaratory
of the common law, and so it is as to the question there
under discussion, and so it is in a broad sense generally;
but it does not exactly express the common law rule, and
its language must govern rather than common-law pre-
cedents contrary thereto. Authority under similar states
of the law is rare, if it exists at all. In Kansas it seems
to be the practice to render a personal judgment for the
whole mortgage debt at the same time foreclosure is de-
creed, and to then sell the mortgaged property, and if it
prove insufficient, to then issue a general execution which
may be levied on other property. The Kansas court has
held in well reasoned opinions that the statute makes
such judgments no different in character or effect from
other judgments, and that they become liens upon land
other than that mortgaged at the same time as other
judgments, and from the first day of the term. (*Lisle v.
Cheney,* 36 Kan. 578; *Thompson v. Hubbard,* 44 Pac. Rep.
[Kan.] 1095.) In Indiana the same practice prevails and
the same view is taken of the nature of such judgments,
although there it does not appear that judgments gen-
erally relate back to the beginning of the term. (*Fletcher
v. Holmes,* 25 Ind. 458.) Our statute, as it existed at the
time these judgments were rendered, authorized judg-
ments to be rendered for a deficiency in the case of a mort-
gage foreclosure, on the coming in of the report of sale,
and executions to issue as in other cases. (Code of Civil
Procedure, sec. 847.) No intention is expressed that such
a judgment in character or effect should differ in any way
from other judgments. That statute was passed in 1857,
and was, therefore, in force when, in 1858, section 477
was adopted, making the lien of judgments generally
relate back to the first day of the term, and making cer-
tain exceptions to this rule of which deficiency judgments

are not one.   If it had been the intention to except such judgments, the legislature would not have contented itself with merely excepting judgments by confession and those rendered at the same term "at which the action is commenced."   The latter language is rendered certain by other sections of the Code which determine when an action is deemed commenced.   That phrase cannot, without straining, be made to apply to a motion made in a case which has confessedly been in progress for some time.   When the legislature enacts a rule and at the same time excepts certain cases from its operation, the extent of the rule is not open to doubt or to judicial determination.   The rule applies to all cases not within the designated exceptions.   To engraft upon the statute exceptions other than those specified would be legislation, pure and simple.   At the common law judgments by fiction related back to the first day of the term; and after lands came to be subjected to their payment the injustice of the rule as against purchasers became manifest. Thereupon we find parliament, in the famous statute of frauds (29 Car. II, ch. 3, secs. 13-15), enacting, after a recital of the mischief in view, that any judge or officer at the signing of any judgment shall set down the day of the month and year of his so doing, upon the paper book, docket, or record which he shall sign, and that such judgments shall bind purchasers for a valuable consideration only from the time they shall be signed and not from the first day of the term.   For nearly two hundred years before our statute was passed the English law had thus protected purchasers; but our legislature saw fit, instead of affording this broad protection, to establish the old rule by statute and to create only limited exceptions thereto.   The exceptions do not extend, as was held in the absence of statute, in Virginia, to all cases not in a situation where judgment might be rendered on the first day of the term, because the exception extends only to confessions and to cases commenced at the term at which judgment is rendered.   This excludes from the exception

all cases commenced before the opening of the term, and where the answer day does not occur until after the term opens. It cannot be possibly said that such cases are within the exception; but they are cases not in such a condition at the beginning of the term that judgment might be rendered. If one case of that character exists by plain import of the language of the statute, it is conclusive evidence that the legislature did not intend to imply that tacit general exception, or merely give force to the old fiction with all its limitations.

The defendants ask, in case it should be determined that the mortgages are subject to the lien of the judgments, that they be subrogated to the rights of the savings bank, whose prior mortgage was paid from the loan secured by the later mortgages. The case is in this respect not different in principle from that of *Bohn Sash & Door Co. v. Case,* 42 Neb. 281, where it was held that subrogation was not permissible.

The decree of the district court must be reversed, with directions to enter a decree subjecting the land to the payment of the judgments of plaintiffs, prior to the claims of the mortgagee and of George H. Green.

REVERSED AND REMANDED.