28   225
128   369
28   225
144   53

## DUNBAR *v.* RAWLES.

REPLEVIN.—CONDITIONAL SALE.—A, by parol, agreed with B that he should have the use of two mares owned by A, to keep them on the farm B was then occupying, and upon the payment to A of $150, at a future day fixed, they should be the property of B. Afterwards, and before such payment, A, with the consent of B, sold them to C, who agreed with B, by parol, that he should have the mares to work and use, keeping them on the place then occupied by B, and upon paying C $100, at a future day fixed, they should be the property of B, but until payment to remain the property of C. Afterwards, B, without having made payment, sold one of the mares to D, who removed her from the place B was then occupying. At the time of sale D was ignorant of C's claim, but within an hour B informed him of it, and offered to rescind and restore the consideration. D refused. Replevin by C.

*Held,* that contracts are to be construed so as to give effect to the intention of the parties, when not inconsistent with legal rules; that the agreement between A and B and between B and C was not a mortgage, but a conditional sale, and valid; that courts of equity will treat as a mortgage what at law would be a conditional sale, but only when necessary to prevent fraud; that B did not, at any time, have any title to the mare, but a mere right of possession, and no power to dispose of her, and his vendee, although a *bona fide* purchaser, acquired no better title than his vendor; and that the removal from the place forfeited his right to retain possession.

*Held,* also, that the absolute title was in C, and he was entitled to recover in replevin or trover from D, and that the measure of damages was the value of the property, if a return could not be had.

*Quære,* whether D might have paid the amount agreed upon between C and and B, and thus have perfected his title to the mare.

APPEAL from the *La Grange* Common Pleas.

RAY, J.—The appellee brought his action of replevin for a horse alleged to be in the possession of the appellant and unlawfully detained by him. The cause was submitted to the court for trial, and a special finding of facts was ren-

dered and the conclusions of law thereon. These were as follows:

"That the mare described in plaintiff's affidavit was, together with another one, on the —— day of *January* last, the property of said plaintiff, and on said day he sold and delivered the two to *James Jones* for two hundred and fifty dollars, receiving in part pay a sorrel mare at one hundred and fifty dollars, the remaining one hundred dollars to be afterwards paid by said *Jones*, the said sorrel mare, taken at one hundred and fifty dollars by plaintiff on said sale of the two mares, being the property of one *Jennings*." That afterwards, the said *Jones* made the following parol contract with said *Jennings*, in regard to said two mares, to-wit: that said *Jennings* should have the use of said mares, keep them on the farm which he was then occupying, take care of them, and upon paying *Jones* one hundred dollars on the 1st day of next *September*, they should be the property of said *Jennings*, but until the making of such payment they were to remain the property of said *Jones*. That afterwards, *Jones*, being about to leave the State, and still owing the plaintiff the one hundred dollars of purchase money on said mares, made a parol agreement with the plaintiff by which, in consideration of said one hundred dollars, the said mares were sold to the plaintiff, which agreement was made in the presence of and with the consent of said *Jennings*, and the plaintiff then and there made a parol agreement with *Jennings* that he, *Jennings*, should have the mares to work and use, keeping them on the place *Jennings* was then occupying, and upon paying plaintiff one hundred dollars by the 1st of *September* next, they should then be the property of said *Jennings*, but until the making of said payment they should remain the property of the plaintiff: that no note, security or evidence of debt, was taken for the payment of said one hundred dollars by *Jennings*, either by *Jones* or the plaintiff; that afterwards, on the 23d day of *March* last, said *Jennings* sold said mare now in controversy to

defendant for one hundred and fifty dollars, together with a sow and pigs for fifty dollars, taking in payment defendant's note for one hundred and ten dollars and a colt at ninety dollars, and delivered said mare and the sow and pigs to defendant, and defendant delivered to said *Jennings* said colt and his note for the one hundred and ten dollars; that at the time of making such sale of said mare to defendant, *Jennings* did not inform him of any claim of plaintiff upon said mare, but within an hour afterwards, *Jennings* went back to defendant and told him that the mare belonged to plaintiff, and wanted to trade back, and tendered back the colt and the note, and requested defendant to let him have the mare and the sow and pigs, but defendant refused so to do; that the plaintiff, on the 25th day of *March* last, and before the commencement of this suit, demanded the said mare of said defendant, who then had her in his possession, but defendant refused to give him possession; that said mare was, at the commencement of this suit, of the value of one hundred and fifty dollars; that plaintiff has sustained damages to the amount of one dollar; that said mare was not found or taken by the officer who served the writ of replevin in this action. From which facts the court finds the following conclusions of law: That the plaintiff was, at the time of the commencement of this action, the owner and entitled to the possession of said mare demanded in this suit, and that she then was unlawfully detained by said defendant; that the plaintiff is entitled to recover of and from the defendant the sum of one hundred and fifty dollars, the value of said mare, and one dollar for his damages for such detention."

It is insisted that upon the facts found, the conclusions of law are not as stated by the court. The transaction between *Jones* and *Jennings*, it is claimed, did not constitute a conditional sale, but was simply a mortgage of the property; and not having been recorded, the appellee is without remedy for the loss of the remainder of the sum he was to receive for the horse.

In the construction of contracts, the intention of the parties is chiefly to be considered, and that effect given to the contract, if not inconsistent with legal rules.    Here, the parties have declared that the mares, "until the making of such payment, were to remain the property of said *Jones*," and "*Jennings* should have the mares to work and use, keeping them on the place *Jennings* was then occupying." It cannot be questioned that the parties had the power to make this contract, and that under it the property would remain in *Jones*.    *Barrett* v. *Pritchard*, 2 Pick. 512.

The cases of *Shireman* v. *Jackson*, 14 Ind. 459, and *Hanway* v. *Wallace*, 18 *id.* 377, are not to be distinguished from the case before us.    In those cases, and in *Thomas et al.* v. *Winters*, 12 Ind. 322, and *Plummer et al.* v. *Shirley*, 16 *id.* 380, the authorities are so fully referred to, and the law so plainly stated, as to require no further discussion.    But it is said that courts of equity will often treat as a mortgage what at law would be a conditional sale.    This, however, is only done upon equitable grounds and to prevent fraud. But upon what ground does the appellant ask for equitable aid?    Within an hour after his purchase, and while he was in possession of the property in dispute, he was fully informed that his vendor had no title, and his own property was tendered back to him.    He could have protected himself from loss and restored the mare to the control or possession of her owner.    He elected rather to stand by his bargain, at the expense of the appellee.    It is not often that the court is asked to place an equitable construction upon a contract for the protection of such equities.

But it is claimed that the sale by *Jones* to the appellant was not accompanied by a delivery, and was therefore void under our statute.    Upon that subject this language is used in *Forbes* v. *Marsh*, 15 Conn. 384:

"The rule of law making the property of one man liable for the debts of others, in whose hands it is found, is applicable particularly to that property which was once owned by the possessor and is by him sold or mortgaged to an-

other and then suffered to remain in his possession. In such cases possession is evidence of fraud, because there is not given to the world the usual evidence of a change of title. The vendor, or mortgagor, is therefore presumed to remain owner of the property, as heretofore. It is otherwise in cases like that before us. The vendee comes into possession of property which was known to belong to another man. Whether, therefore, the vendee has borrowed it, or hired it, or purchased it, becomes a matter of inquiry and ought to be ascertained by him who proposes to trust his property upon the faith of this appearance, for the law offers its protecting shield to those who attempt to protect themselves."

This language was applied to the case of a conditional sale. In the case under our consideration, *Jennings* did not, at any time, have any title to the mare, but a mere right of possession. *Hart et al.* v. *Carpenter*, 24 Conn. 427. But whether the result claimed by appellant would follow, it is unnecessary to decide, as no such affirmative conclusion can be drawn from the facts found by the court. The finding is that "the said mares were sold to the plaintiff," * * "the plaintiff then and there made a parol agreement with *Jennings* that he, *Jennings*, should have the mares to work and use." The words "should have" certainly do not necessarily imply that he then had them in possession; that they were sold to the appellee, would rather imply a delivery to him by *Jones*.

The appellant objects that the damages are too large; that as *Jennings* might, before the expiration of the time fixed for the payment of the money, have acquired title to the mare by the payment of one hundred dollars, the damages cannot exceed that sum, although the time limited had passed. It was held in *Deshon* v. *Bigelow et al.*, 8 Gray 159, that a sale and delivery of goods upon condition that the title shall not pass until payment of the price gives the vendee no title which he can convey to a purchaser in good faith and for a valuable consideration. In the case

of *Coggill et al.* v. *Hartford and New Haven Railroad Co.*, 3 Gray 545, the law is thus stated by BIGELOW, J.: "All the cases turn on the principle that the compliance with the conditions of sale and delivery is, by the terms of the contract, precedent to the transfer of the property from the vendor to the vendee. The vendee, in such cases, acquires no property in the goods. He is only a bailee for a specific purpose. The delivery, which in ordinary cases passes the title to the vendee, must take effect according to the agreement of the parties, and can operate to vest the property, only when the contingency contemplated by the contract arises. The vendee, therefore, in such cases, having no title to the property, can pass none to others. He has only a bare right of possession; and those who claim under him, either as creditors or purchasers, can acquire no higher or better title. Such is the necessary result of carrying into effect the intention of the parties to a conditional sale and delivery. Any other rule would be equivalent to the denial of the validity of such contracts. But they certainly violate no rule of law, nor are they contrary to sound policy. The cases above cited expressly recognize them as legal and valid contracts between the vendor on the one hand, and the vendee and his creditors on the other. If valid to this extent, it necessarily follows that they are so for all purposes. If the property does not pass out of the vendor for one purpose, it certainly does not for another. If it remains in him at all, it is because such is the agreement of the parties, and it cannot be divested by any act of the vendee until the contract is fulfilled. A *bona fide* purchaser, as well as an attaching creditor, must acquire his title through the vendee. If the latter has no title, he can communicate none. The purchaser and attaching creditor are, in this respect, upon the same footing. No equities can intervene to give the former a better right as against the original vendor than the latter; they are *in æquali jure.* Neither of them has a legal title to hold the property. A mere possession by the vendee carries with it

no right or authority to transfer the title. That continues in the vendor until the conditions of sale and delivery are complied with by the vendee, or are waived by the vendor. And this constitutes the precise distinction between a sale and delivery of goods on condition, and a sale procured by fraud or false representations on the part of the vendee. In the latter case, the property passes by the sale and delivery, because such was the agreement and intent of the parties. Therefore the vendee, having the property as well as the possession of the goods, can pass a good title to a purchaser who takes the goods in good faith and without notice of the fraud. But the vendor can reclaim the goods by rescinding the contract and avoiding the sale, so long as they remain in the hands of the vendee, or of any one who has taken them with notice of the fraud, or without paying a valuable consideration for them. In such case, the title to the goods is in the vendee, though defeasible at the option of the vendor, because the vendee, or those claiming under him with knowledge of the fraud, cannot honestly or legally hold the property as against him. But in the case of a conditional sale and delivery, the title does not pass from the vendor until the condition is fulfilled. The vendee obtains no right, under such sale, to dispose of the property, but only to hold it until the terms of the contract are complied with. *White* v. *Garden*, 10 C. B. 919."

To the same effect are *Sargent et al.* v. *Metcalf*, 5 Gray 306; *Burbank* v. *Crooker et al.*, 7 *id.* 158. It would seem from these cases, that as the absolute title is in the vendor, and he is entitled to recover in replevin or trover, from any purchaser from his vendee, that the measure of his damages must be the value of the property, if a return cannot be had.

The case before us is still stronger than any we have cited, as *Jennings* was not entitled to the absolute possession of the mares, but only " to work and use them, keeping them on the place he was then occupying." The removal from the place forfeited his right to retain possession.

In the case of *Hart et al.* v. *Carpenter, supra,* one *Bebee* took *Carpenter's* cow into his possession, under an agreement that he should keep and feed her, paying himself therefor from the milk and butter received and made, and if, at any time within four months, *Bebee* should pay for the cow the sum of thirty-five dollars, then the title should vest in him, if not, he was to return the cow in good condition. *Bebee* did not pay for the cow, but sold and delivered her to *Hart,* for full value, he believing her to be the property of his vendor. Held, that *Carpenter* was entitled to recover from *Bebee,* in trover, thirty six dollars and fifty cents, the full value of the cow, and costs.

This ruling sustains the judgment in the present case. The appellant has not attempted to comply with the condition upon which alone his vendor could have acquired title to the mare, and it is not necessary that we should decide how far he might, had he so chosen, have availed himself of the rights of his vendor to acquire title.

The judgment is affirmed, with five per cent. damages, and costs.

*A. Ellison,* for appellant.

*J. B. Wade,* for appellee.