Kiefer *et al. v.* Klinsick.

No. 17,338.

## KIEFER ET AL. *v.* KLINSICK.

ESTOPPEL.—*Husband and Wife.—Mortgage on Wife's Property by Husband.*—A wife is not estopped to deny the validity of a mortgage on a stock of goods owned by her, executed by her husband without her knowledge or consent, by the fact that she permitted him to remain in possession of such goods, purchasing on credit and selling at retail, and that the mortgagee, before obtaining the security, had sold the goods to the husband on credit, believing him to be the owner of the business.

PLEADING.—*Special Plea.— Estoppel.*—Facts claimed to constitute an estoppel must be specially pleaded.

AGENCY.—*Authority to Buy and Sell at Retail.—Right to Mortgage.*—A general agent with power to buy goods on credit and retail the same has no implied authority to mortgage the entire stock of goods.

From the Cass Circuit Court.

*Nelson & Myers* and *Morris, Newberger & Curtis,* for appellants.

*Fansler & Mahoney* and *Winfield & Taber,* for appellee.

McCABE, J.—This case comes here from the Appellate Court under the proviso of section 1362, R. S. 1894, regulating the jurisdiction thereof, with a recommendation of a majority of that court that a certain decision hereinafter named, affecting the questions involved in this appeal, be overruled.

The facts of this case as disclosed by the evidence are briefly as follows:

In August, 1885, the appellee, Jennie Klinsick, was a married woman, the wife of one William Klinsick. She was sole owner of about $1,300 in money which

she had realized from property inherited by her. Her husband was a druggist by profession and was desirous of engaging in that business. A stock of drugs and fixtures, situated in a certain building in the city of Logansport, were for sale. Mrs. Klinsick gave her husband the said $1,300, for the purpose of purchasing said stock and fixtures and with which he did purchase the same. He immediately took possession thereof and made arrangements to continue the business at the same place. He put a sign on the window in large letters in these words: "Klinsick's Drug Store." He had letter heads and prescription blanks printed and relabeled the goods in his own name. He conducted said business in his own name from the time of the purchase until shortly before this action was commenced in January, 1892. He sold from said stock, and from time to time, as the business required, he purchased goods to replenish the same. All goods bought for the purpose of replenishing said stock were bought, billed, and shipped in his name. All accounts pertaining to said business, including the bank account, were made out and kept in his own name. The stock of goods were listed for taxation in his name. His family, including the appellee, lived from the proceeds of said business during all of said time. Mrs. Klinsick was frequently around and in said store. The appellants, Augustus Kiefer and William H. Schmidt, were wholesale druggists of Indianapolis, doing business in the name of "A. Kiefer & Co." and they employed traveling salesmen in the prosecution of their business. In a short time after William Klinsick took possession of said store one of the traveling salesmen of A. Kiefer & Co. called upon him for the purpose of making sale of their goods. The salesman made inquiry of William for the purpose of

learning the style of the firm, and said William gave the name of "William Klinsick." The said A. Kiefer & Co., relying upon such information, sold goods to the said William, and their salesmen called upon him every two weeks for the period of about six years, and sold to him in said time large quantities of goods in his own name. In the month of November, 1891, the said William was in debt to A. Kiefer & Co. on account of such sales in the sum of $640, a part of which indebtedness was evidenced by accepted drafts and part by notes and open account. On the 12th day of November, 1891, A. Kiefer & Co. sent their attorney to see the said William Klinsick, with instructions to obtain payment or security for their claim. The said attorney saw the said William, and on failure to secure payment he offered to divide the claim into a number of notes and give long time on condition that the said William would give personal security or a mortgage on the stock. The offer was not accepted at that time. On the 29th of December, 1891, William Klinsick executed to said Kiefer & Co. a chattel mortgage on the stock of drugs and fixtures to secure such indebtedness to them, and in consideration thereof the time of payment was extended, the longest extension being for a period of eight months, and at the same time William Klinsick made an affidavit that he was the absolute owner of the stock and goods. The mortgage provided that if there were other liens, or in case of execution the whole debt should become due. In point of fact there were then executions in the hands of a constable, of which A. Kiefer & Co. had no knowledge. These executions were issued on judgments taken against Mrs. Klinsick and her husband. As soon as the constable learned of the existence of said mortgage he levied the executions on the stock of goods and took possession thereof. The appellants,

Kiefer *et al. v.* Klinsick.

Nelson & Myers, at the request and as the attorneys of A. Kiefer & Co., elected to treat the debt as due under the mortgage and took possession of the goods, subject to the execution levies, and afterwards A. Kiefer & Co. sold the same to third parties. The executions were paid in full before the commencement of this action. During the time William Klinsick was engaged in said business, his wife, the appellee, gave him $600 or $700 in addition to the original purchase price, to be used in said business, and which was used in the same. No note or other evidence of indebtedness was ever taken by Mrs. Klinsick on account of such moneys. Nor was there any settlement or statement of account between them. The appellants, A. Kiefer & Co., had no knowledge that Mrs. Klinsick had any interest in or made any claim to said store or goods until shortly before this action was instituted; and they made all sales of goods to William Klinsick upon the belief that he was the owner and upon the credit given him by reason of being the ostensible owner thereof. There was no evidence which tended to show that anything more than a retail drug business was ever done or contemplated by William Klinsick or by his wife, the appellee, prior to the execution of the mortgage. Nor was there any evidence which tended to show that there was a secret agreement or trust between Mrs. Klinsick and her husband in relation to said goods.

Nor was there any evidence which tended to show that Mrs. Klinsick had any knowledge of the execution of the mortgage by her husband at the time the same was done, or that she authorized him to execute the same. Mrs. Klinsick testified that she was the owner of the goods at the time the mortgage was given, and asserted such ownership by reason of the

original purchase having been made with the said $1,300, and on account of her other money used in said business. There was evidence which tended to show that Mrs. Klinsick had full knowledge of the fact that said business was conducted in the name of her husband, and there was evidence which tended to show that on one occasion, after the debt of A. Kiefer & Co. had been incurred, said occasion being on the day before the mortgage was executed, she stated to said appellants' attorney that the debt was her husband's business and that the store was her husband's store. It is proper to say that she denied that she had knowledge that the business was conducted in her husband's name and that she also denied having made the statement to said attorney that the debt and store were her husband's. The evidence upon these points was conflicting and of such a character as that the jury would have been justified in finding that she did not make such statement, and that she did not have such knowledge. We therefore cannot disturb their finding thereon.

She brought this action to recover the value of the goods alleged to have been converted. The appellants answered the general denial and two special paragraphs in estoppel. The issues joined were tried by jury, which returned a verdict for appellee in the sum of $690, on which final judgment was rendered. The only assignment of error discussed by appellants' counsel is that of overruling the motion for a new trial. In their motion for a new trial the appellants charged that the trial court erred in excluding certain evidence offered by them, and in improperly instructing the jury and in refusing to instruct the jury as requested by them. On the trial the appellants were permitted to give in evidence the declaration of William Klinsick, concerning said business and the

Kiefer *et al. v.* Klinsick.

manner in which he conducted the same.  On one
occasion William Klinsick was at the business house
of A. Kiefer & Co., in Indianapolis.   He was not there
for the business of buying goods, but simply made a
social call.  Appellants then propounded to their wit-
ness, one of the appellants then testifying, this ques-
tion: "State what, if anything, he ever said to you at
any time before the commencement of this suit, during
the time he was running the drug store herein Logans-
port about the ownership of the drug store."   The
court sustained an objection to the question.   Con-
ceding that the declarations of William Klinsick,
while in the actual possession of the goods or while in
the transaction of business pertaining to said store
were competent, this question is too general, as it is
not limited to the time when in possession or while in
the transaction of business pertaining to the store.
In view of the fact that the appellants were permitted
to give in evidence the declarations and conduct of
William Klinsick and the manner in which he con-
ducted said business *ad libitum* while in the actual
possession, there was no error in this ruling.   The
ownership of the goods, at the time the mortgage was
executed, was one of the important questions in the
case.   It was a question of fact to be determined by
the jury under proper instructions by the court.   One
of the methods of acquiring the title to personal prop-
erty is by gift.   The appellants contend that the court
erred in refusing to give certain instructions as re-
quested by them, and in modifying other instructions
relating to the subject of a gift of the money and of
property.   After a careful examination of all the in-
structions given by the court bearing upon a gift of
property and money, we are satisfied that this matter
was fairly presented to the jury, and it is unnecessary

to set out in this opinion the instructions given, refused, and modified, relating to a gift.

The court also, of its own motion, gave several instructions to the jury bearing upon other questions to which the appellants excepted. The appellants presented to and requested the court to instruct the jury on the subjects of agency and *estoppel in pais.* The court refused these requests. These instructions are very lengthy, and we will not encumber this opinion by setting them out. If, upon the above facts, the law is with the appellee then the ultimate judgment is right and no intervening error, if any there be, will avail the appellants in securing a reversal. In this branch of the case the appellants contend, first, that the facts disclose that William Klinsick was the agent of the appellee, with full authority to mortgage the stock in his own name for her; second, that the facts establish an *equitable estoppel* against her. The usual method of transacting business by an agent is to use the name of the principal, but if the agent transact the business in his own name, but actually for an undisclosed principal, the person with whom the contract is made may, when he discovers the principal, elect to hold the principal for the contract, although he may have dealt with the agent, believing him to have been the principal and given him credit. *Thomson* v. *Davenport,* 9 B. & C. 78; Mechem Agency, section 697; Story Agency, sections 446, 449; *Thomas* v. *Atkinson,* 38 Ind. 248. Conceding, without deciding, that the facts of this case show that William Klinsick was the general agent of Mrs. Klinsick in the management of the business, and had power to buy goods upon credit, and to retail them and to apply the proceeds to the payment of the debts contracted, it does not follow that he had authority to execute the mortgage. An agent authorized to sell either real or personal

property has no power to mortgage. *Jeffrey* v. *Hursh*, 49 Mich. 31; *Wood* v. *Goodridge*, 6 Cush. 117; Mechem Agency, sections 323, 361. In *Switzer* v. *Wilvers*, 24 Kan. 384, 36 Am. Rep. 259, the plaintiff left a colt with the defendant with authority to sell the animal. The defendant, without authority, executed a chattel mortgage in his own name to another party. It was held that the mortgage was void and that a power to sell does not authorize a mortgage. If the owner of the personal property place another in possession with full power to sell for cash or on credit, at wholesale or at retail, a sale made by such person will confer a valid title, whether the sale be made in the agent's name or in the name of the principal. Or if the owner of personal property sell it upon credit and deliver the same to his vendee for the apparent or implied purpose of resale by such vendee, a condition in the contract that the title shall remain in the vendor until the purchase price is paid is void as against a purchaser from his vendee. *Winchester Wagon Works, etc., Co.* v. *Carman*, 109 Ind. 31. But if the sale be not for the purpose of consumption or resale, and be upon the condition that the title of such property shall remain in the vendor until the purchase price is paid, the vendee cannot, prior to the payment of the purchase price, sell or encumber the property in such a manner as to defeat the title of the original vendor. *Bradshaw* v. *Warner*, 54 Ind. 58; *Baals* v. *Stewart*, 109 Ind. 371; *Dunbar* v. *Rawles*, 28 Ind. 225; *Hodson* v. *Warner*, 60 Ind. 214; *Lanman* v. *McGregor*, 94 Ind. 301; *Payne* v. *June*, 92 Ind. 252; *Thomas* v. *Winters*, 12 Ind. 322. A chattel mortgage is a conditional sale, and upon the breach of the condition the sale becomes absolute. If appellants' mortgage be upheld, it results in a sale at wholesale. The facts of this case, however, show that only a retail business was contemplated by the ap-

pellee.   A power to sell at retail does not authorize a
sale at wholesale.   The last contention that the ap-
pellee is estopped by her acts, declarations and con-
duct to assert a claim to the goods adverse to that of
the appellants is the most important question in the
case.   The estoppel sought to be invoked against the
appellee assumes or proceeds upon the theory that
she was the original owner of the goods, but that
owing to her conduct she has lost her title thereto.
The vital principle of an equitable *estoppel* is that of
fraud.   He, who by his language or conduct, leads an-
other to do what he would not otherwise have done,
will not be permitted to subject such person to loss
or injury by disappointing the expectations upon
which he acted.   A change of position by the first
party would involve both fraud and falsehood, and
the law abhors both.   The principles of *estoppel in pais*
have been applied to a great variety of cases.   The
doctrine has no application where everything is
equally known to both parties, or where the party
sought to be estopped was ignorant of the facts out
of which his rights sprung or where the other party
was not influenced by the acts asserted in estoppel.
But if one stand by and see another purchase prop-
erty without disclosing his interest to the person
about to purchase, he cannot afterward set up a claim
of which the purchaser had no notice.   Nor is it nec-
essary that the person sought to be estopped be
present at the time the sale is consummated.   If he
have knowledge of the contemplated sale and of the
fact that the purchaser is ignorant of his rights it is
his duty to disclose his interest to such purchaser.
Nor is it necessary that there should exist a design to
deceive or defraud on the part of the person sought
to be estopped.   It is enough if when he asserts his
claim it would be inequitable and unjust to allow it to

prevail against the purchaser. The falsehood and moral wrong which the law denominates fraud appears when the claim is asserted. And this is true whether a party knowingly remains silent or so negligently conducts himself with reference to his rights as to mislead another. *Duckwall* v. *Kisner*, 136 Ind. 99; *Anderson* v. *Hubble*, 93 Ind. 570; *Fletcher* v. *Holmes*, 25 Ind. 458; *Gatling* v. *Rodman*, 6 Ind. 289. The appellants claim title to the property through the mortgage. The facts of this case, however, show that the appellee had no knowledge of the execution of the mortgage and that she never authorized it. If she had no knowledge of the execution of the mortgage, that could not of itself work an estoppel against her. It is true that title may be created by an *estoppel in pais. Pitcher* v. *Dove*, 99 Ind. 175. But the person who invokes this principle must invoke it for himself, and not in the interest of a third party. The appellants contend that the appellee estopped herself by her conduct in permitting her husband to take and remain in possession of said goods for more than six years; buying and selling and conducting said business in his own name; that the fact that he was in possession conducting said business in his own name and exercising the powers of ostensible ownership, induced the appellants, A. Kiefer & Co., to believe that he was the owner thereof and that they gave him credit and sold goods to him upon the faith and credit of being the owner thereof. It will be observed that this contention is not based upon the conduct of the appellee at the time of the execution of the mortgage, but upon her declarations and conduct prior to that time. The rights of A. Kiefer & Co. in the property in controversy, if any they had, prior to the execution of the mortgage were only such rights as they acquired by reason of being creditors

of the appellee or of William Klinsick. The right that a general creditor has in the property of his debtor is extremely vague and uncertain; but as the right may ripen into something tangible, and. as it is the duty of a debtor to apply his property in discharge of his debts, the law will protect the creditor against the fraudulent operations of the debtor and will aid the creditor in subjecting the debtor's property to the payment of his debts. If one person permit another to use his property, exercising all the powers of ownership over it for the purpose of giving such other person credit and financial standing, and such other person contract obligations upon the faith created by reason of such ostensible ownership, the real owner will be estopped to deny the right of such creditors to subject such property to the payment of their claim. Again, if one knowingly or negligently permit another to use his property, exercising all of the powers of disposition over it, and knows, or might have known, by reasonable diligence, that third parties were dealing with such person, creating obligations upon the faith and credit given such person by reason of such ostensible ownership, the real owner will be estopped to deny the right of such creditors to subject the property to the payment of their claims. If A allows lands paid for by him to be taken in the name of B, and third persons deal with and give B credit, without knowledge of the rights of A, A will be estopped to assert an interest in the lands as against such creditors. *Minnich* v. *Shaffer*, 135 Ind. 634; *Michener* v. *Bengel*, 135 Ind. 188; *Adams* v. *Curtis*, 137 Ind. 175. A deed of conveyance is the highest evidence of title to real estate, and when coupled with possession, the grantee has all the *indicia* of title. The statute, section 3335, R. S. 1894, requires all conveyances of land to be by deed in writing, subscribed,

sealed and duly acknowledged. When the debtor exhibits his deed, or the creditor learns of it through the record, the creditor has the right to rely upon it for all it purports to be. The same rule holds good in reference to the transfer of certain kinds of personal property, such as shares of stock in corporations, promissory notes and the like, such transfer being regulated by statute. In *Hirsch* v. *Norton, Admr.,* 115 Ind. 341, it appeared that Hirsch assigned and transferred ten shares of bank stock to one Study, and caused the formal transfer to be made upon the books of the corporation; the bank issued a certificate for the ten shares to Study. At the time of the transfer Hirsch and Study entered into a secret agreement to the effect that Hirsch should remain the owner of the stock. The court held that the creditors of Study, whose claims were contracted upon the faith of such ownership, would be protected against such secret agreement. That decision rests upon the fact that the shares of stock were a peculiar kind of personal property and assignable by a peculiar method, prescribed by statute. The court said: "The cases which govern transfers of tangible personal property cannot control where the subject of the transfer is the capital stock of a corporation." In that case Study was clothed with all the legal *indicia* of title. "In appearance he was the sole and legal owner of the stock. The books of the bank showed this ownership and he was the holder of the certificate which was the highest and best evidence of ownership. Nothing was lacking in his evidence of title." In *Moore* v. *Moore,* 112 Ind. 149, it was held that where the holder of a promissory note is induced by fraud and without consideration to indorse and deliver to another, who afterwards indorsed it to an innocent purchaser, the original holder was estopped to deny the title of the

fraudulent endorsee as against the last purchaser. That decision rests primarily upon the fact that the statute, section 7515, R. S. 1894, provides that all promissory notes "shall be negotiable by indorsement thereon so as to vest the property thereof in each indorsee successively." The first indorser clothed his indorsee with every *indicia* of title and put it in his power to transfer the note with all the evidence of ownership being in him. To permit the first indorser to question the title in the hands of the last holder would be a palpable fraud, such as the law will not tolerate. 2 Herman Estop, section 978. The case before us is distinguishable from the above cases cited and relied upon by the appellants. In these the effort was to obtain the judgment of the court affecting the status of particular property. And in those cases also the debtor or the vendor was clothed with all evidences of title. Here William Klinsick had possession of the goods, which was only *prima facie* evidence of title in him. Such personal property as is here in controversy is usually transferred by mere delivery unaccompanied by any other evidence of title. In the complexity of modern commercial transactions, it is no unusual thing for the person who has the possession of goods and chattels and empowered to sell the same to be but a mere agent or servant. Possession of such property unaccompanied by any other evidence raises but a bare presumption of title. The largest commercial transactions are frequently consummated through the medium of agents, factors or brokers, and in which the real owner's name does not appear. The law will not permit a debtor to transfer and secrete his property fraudulently from his creditors, but will uncover it and subject it to the payment of his debts. But this is not an action to set aside a fraudulent conveyance, or to subject particu-

lar property to the payment of debts.    Either the appellee or her husband was the owner of the stock of goods before the mortgage was executed.    If the husband was the owner, that is an end to the controversy.    The jury found that he was not.    If the appellee was the owner and her husband was in possession as her agent, with power to conduct the business and contract debts, but without power to mortgage or sell at wholesale, then the rights of the appellants were only such as a general creditor has in the property of his debtor.    If there was any claim here that the goods mortgaged were the same goods sold by A. Kiefer & Co., a very different question would be presented.    One of the answers in estoppel states incidentally that the mortgage on the goods was executed to secure an indebtedness for goods previously sold by them to William Klinsick, "a part of which are the identical goods sued for."    What part or how much is not stated.    The answer purports to be a full and not a partial defense.    Indeed, it proceeds upon another and different theory than that a part of the goods mortgaged were the same goods sold by A. Kiefer & Co. to William Klinsick.    And the case was tried upon such other theory of defense.    The mere fact that a creditor may have an equitable interest in the property of his debtor does not give the creditor the right to convert it to his own use.    The debtor has rights also, and other creditors may have rights.    The appellants also assert that there is an element of estoppel in the declaration of the appellee when she stated to their attorney that the debt and store belonged to her husband.    They claim that they were induced to extend the time of payment and to take a mortgage on the faith of this declaration.    But supposing the jury were not justified in finding against

the appellants on that point, yet the undisputed evidence further shows that appellants' claim had already been contracted when this statement was made, and it also appears that their attorney, when he called upon William Klinsick in November, offered to extend the time of payment and give the said William all the time he wished on condition that he execute a mortgage upon the stock. All of this occurred long before such declaration was made by the appellee.

This being true, it does not occur to us that they were misled into doing the very thing they were proposing to do, before the declaration was made. Nor does it appear that the appellants took the mortgage relying upon such declaration. Moreover, the evidence of these declarations of the appellee, Mrs. Klinsick, if it stood wholly uncontradicted, was entirely without force, because it did not tend to establish any fact in issue in the case. It has been argued by the learned counsel as evidence establishing an *estoppel in pais* against Mrs. Klinsick's assertion of title to the goods in question.

That is certainly the nature of that evidence and it may be truly said that it has no other tendency or relevancy to the case.

But there was no answer setting up any such estoppel.

It has been repeatedly held by this court that if facts constituting an estoppel exist, they must be pleaded specially. *Fleener* v. *Claman*, 112 Ind. 288; *Robbins* v. *Magee*, 76 Ind. 381; *City of Delphi* v. *Startzman*, 104 Ind. 343; *Sims* v. *City of Frankfort*, 79 Ind. 446.

The case of *McGirr* v. *Sell*, 60 Ind. 249, is a much stronger case against the right to invoke the aid of an equitable estoppel than is made by our conclusion

in the case now before us. And that is the case that the majority of the Appellate Court have recommended us to overrule. It is tacitly conceded all round that we need not go to the full extent of that case to affirm the judgment in the case at bar. The acknowledged ability and learning of the judges of the Appellate Court have induced us to give to their recommendation that earnest and thoughtful consideration which seemed to be demanded under the circumstances. We have availed ourselves of the research and learning employed, not only in the briefs of the counsel, but that in the opinions of both the majority and minority of the Appellate Court and all other aids at our command in the limited time at our disposal, to enable us to properly determine whether *McGirr* v. *Sell* ought to be overruled. And after such investigation we have reached the conclusion that it ought not to be overruled. The first impression made on the mind in reading the case is that it is wrongly decided. But it cannot be said that the case was not thoroughly considered. And in the last opinion, it seems to have been twice thoroughly and extensively considered. On a petition for a rehearing a second opinion was delivered by Worden, J., the first opinion having been delivered by Howk, J. Both opinions bear evidence that they were carefully and thoroughly considered. And in the last opinion, Worden, J., speaking for the court, goes into the subject extensively, citing numerous authorities in support of the conclusion reached, not cited in the original opinion, and making a much more lengthy opinion than the original. Yet, great as the fame of that eminent jurist for ability and learning is, we should feel constrained to overrule the case if clearly convinced that it did not correctly declare the law. But we are not so convinced. To overrule that case

would involve the necessity of overruling a large number of other cases decided both before and since *McGirr* v. *Sell* in this court, which cases have never been questioned. We will refer to them further on. The class of cases cited in the majority opinion of the Appellate Court supposed to be in conflict and inconsistent with *McGirr* v. *Sell* is well represented by the main case relied on in their opinion, namely, *Preston* v. *Witherspoon*, 109 Ind. 457. But it seems to us not to have the force and effect ascribed to it by the majority of the Appellate Court. There, Runcie and Wallace were engaged in shipping wheat and receiving wheat for storage for hire from farmers, and on demand of the depositors they agreed to return to them wheat of a like kind, quality and amount as that deposited, but not the identical wheat. There was a direct authority given by the depositors to Runcie and Wallace to sell their wheat in the very manner in which it was sold, and, of course, the depositors could not assert title after it had passed into the hands of innocent purchasers, who purchased on the faith of such authority, because the principle of *estoppel in pais* directly applied. The act of the depositors in authorizing Runcie and Wallace to sell the wheat exactly as they did sell it, was such an act on their part as would make their subsequent assertion of title against the *bona fide* purchaser for value relying upon such authority a fraud on such purchaser. That constitutes the very essence of *estoppel in pais*. The principles of that case and the class of cases to which it belongs, have no application to the facts in the case at bar, or to the facts in *McGirr* v. *Sell*. In the case at bar the right to sell at retail is conceded, but the sale was not at retail. There is not a shadow of evidence that William Klinsick had any authority to mortgage the property or sell at wholesale as the agent

for the appellee.   Nor do we consider the cases to set aside fraudulent conveyances and to subject property to sale on execution in point.   In such cases the effort is to reach specific property for a specific purpose. The jury found that William Klinsick was not the owner of the property.   This being true, the appellee, Mrs. Klinsick, still remained the owner at the time the mortgage was executed.   The title could only pass from her to the appellants by some act of hers or of her agent authorized to pass such title, or by some act of hers by which she would be estopped to deny such authority and transfer.   There is no pretense that she made a sale or mortgage in person.   Her husband had been authorized by her to sell, and he sold   only at retail.   On no other occasion did he mortgage or sell at wholesale.   Appellants could not therefore have been misled as to his power.   We repeat, a power to retail does not confer power to mortgage or sell at wholesale.   As William Klinsick did not own the goods, and as he had no authority to mortgage or sell at wholesale, the rights of the appellants were only such as a general creditor has in the property of his debtor.   One general creditor has no right to convert the property of his creditor to his own use, and then defend on the ground of the indebtedness.   That is what this case is in a nut shell.   The creditor has no absolute right to the property of his debtor even when levied on by an execution. The debtor if a resident householder, is entitled to claim $600 worth of property as exempt from execution.   The indebtedness will not justify or excuse the tort in converting the property.   It may be conceded that the appellants sold goods to William Klinsick upon the faith and belief that he was the owner of the stock of drugs; this act would give them no specific interest in the property.   Nor would they have any specific

interest in it if William Klinsick were the actual owner in the absence of a mortgage by him. He might have legitimately applied it to other purposes. The same is true of Mrs. Klinsick if she were the owner. The mere fact that appellants may have been misled in giving credit cannot operate to confer title to the property of the supposed owner on them. Creating a debt and transferring title to property are two distinct and separate things. When the appellants gave the credit and their claims came into existence, that was a completed transaction wholly independent of the mortgage, it not then being even in contemplation; and yet the estoppel sought to be invoked ties together the giving of the credit with the execution of the mortgage and makes them parts of the same transaction, ignoring all the rights of the debtor in the disposition which he might lawfully make of the property in the interval between the two acts. When the two acts are separated, as they must be, the weakness of appellants' position is apparent. The cases before referred to as standing on the same basis as *McGirr* v. *Sell* and the overthrow of all of which would be involved in overruling that case are *Bradshaw* v. *Warner*, 54 Ind. *supra; Baals* v. *Stewart*, 109 Ind. *supra; Hodson* v. *Warner*, 60 Ind. *supra; Dunbar* v. *Rawles*, 28 Ind. *supra; Lauman* v. *McGregor*, 94 Ind. *supra; Payne* v. *June*, 92 Ind. *supra; Thomas* v. *Winters*, 12 Ind., *supra*. These are all cases involving the right of the vendor of personal property which is sold and delivered upon condition that the title is not to pass until paid for to reclaim the same from a *bona fide* purchaser from the conditional vendee on the ground that the property had not been paid for. In all these cases it was shown that the purchaser from the conditional vendee finding him in possession, exercising all the acts of ownership, and

having no knowledge of the nature of the contract between him and his vendor, and relying upon the apparent absolute title of such conditional vendee, purchased such property in good faith for a valuable consideration. And in several of the cases the doctrine of *equitable estoppel* was expressly invoked to protect such innocent *bona fide* purchaser. But in every case the right of the original vendor to recover and reclaim the property from such *bona fide* purchaser was upheld by this court refusing to apply the doctrine of *equitable estoppel* for the protection of such *bona fide* purchaser. Some of these cases expressly refer to *McGirr* v. *Sell* as authority. And a large number of this class of cases, both in and out of this State, are cited as authority for the conclusion reached in the opinion overruling the petition for rehearing in *McGirr* v. *Sell,* among which are *Dunbar* v. *Rawles, supra; Bradshaw* v. *Warner, supra,* and *Thomas* v. *Winters, supra.* There is good reason why the doctrine of *estoppel in pais* in such cases does not apply. The law authorizes a conditional sale of personal property, and though the property is delivered to the conditional vendee, the title may be retained by the conditional vendor until the purchase-price is paid. The very fact that such a condition is exacted by the conditional vendor is evidence that he does not regard the personal obligation of such vendee sufficient to make him secure. This knowledge of the value of the personal obligation of the conditional vendee evidently is the result of careful inquiry for the protection of such vendor. When he makes such a contract, he has done nothing more than the law authorizes and empowers him to do for his own protection. There is no wrong about it, there is nothing immoral about it. And if all others in dealing with

the conditional vendee as to that property will take the same care and precaution that he did, no one will lose anything. If there was a fixed legal mode of conveying ordinary personal property as there is for conveying real estate, bank stock and some other peculiar kinds of personal property, a different rule might obtain. In those cases the conveyances are to be in writing and made a matter of public record. Hence, when the owner of real estate suffers it to stand in the name of another on the public records, on the faith of which credit has been extended to such person, or the property purchased in good faith in ignorance of the true state of the title, the real owner may be estopped to assert his title against such creditors or purchaser, the other elements of estoppel existing. *Quick* v. *Milligan*, 108 Ind. 419. The latter is one of the cases cited and relied on in the opinion of the majority of the Appellate Court, and well represents another class of cases cited in such opinion. That line of cases is not applicable here for obvious reasons.

But in case of ordinary personal property it is different. The title to such property may be, and ordinarily is, transferred from seller to buyer by a mere verbal agreement. And the seller may secure himself by retaining the title until it is paid for, although he delivers the possession to the vendee. If there was any legal mode of making this contract a matter of public record or notoriety, he might be estopped from asserting his title against a *bona fide* purchaser, on his failure to so make it public. But there is not. He cannot mark or brand the property so as to convey correct information to the world, because such marks may be effaced.

If he may not sell his property, retaining the title for his security lest some one too full of trust and confidence shall purchase it *bona fide* and in ignorance of

the true state of the title, without subjecting himself to be estopped to assert his title, then his property must remain in unproductive idleness; and that, too, not because he is about to do any act to mislead anybody, but because somebody may have too much confidence in the very man that the owner of the property does not confide in.

Every man who purchases personal property of another ordinarily takes chances of losing the purchase-price, if he has failed to inform himself in advance as to the title of the seller, if such seller is not financially good.

In *Mansur* v. *Haughey*, 60 Ind. 364, a case very much in point here, at page 370, it was said, by this court, that: "The doctrine of *estoppel in pais* involves that of contributory negligence." And that case cites with approval *McGirr* v. *Sell*. He who purchases ordinary personal property of another, whose financial standing is not good, without informing himself as to the state of the title, certainly acts imprudently to say the least of it. It was within his power to obtain correct information. It was not in the power of the conditional vendor ordinarily to inform the world that he had retained the title until the purchase-money was paid. Had he known of the contemplated sale by his conditional vendee before it was consummated, the imperative duty to forbid it arose; and on failure of which he will be estopped. But where he knows nothing of it, he cannot be made chargeable with the consequences of the over-confident purchaser's imprudence and negligence in trusting to the man whom the original vendee would not and did not trust. In such a case the conditional vendor has done no act or said no word to mislead the *bona fide* purchaser to confide in the conditional vendee's title, nor has he remained silent when he ought to have spoken with like effect.

To carry the doctrine of *estoppel in pais* to the full extent insisted on by the appellants would result in making it wholly unsafe for one to lend his horse to a neighbor for the most laudable purpose lest the borrower may sell him to one ignorant of the true state of the title. In such case, according to appellants' counsel, the doctrine of *estoppel in pais* may be invoked to confer title on the careless man who bought the borrowed horse without informing himself as to the title.

The same principles apply where the owner puts his property into the possession of his agent to carry on a certain business for such principal. One who deals with such agent in regard to such property, outside of the line of business he is authorized to and is carrying on for his principal, without imforming himself as to the title of such agent, cannot invoke the principle of *estoppel in pais* against the principal's assertion of title, unless such principal has done or said more than simply to put such agent in charge of such property and business, clothing him with power to carry it on calculated to mislead the person so dealing with such agent. In the language of Mitchell, J., speaking for the court in *Alexander* v. *Swackhamer*, 105 Ind. 81: "To constitute an estoppel the party sought to be estopped must have designedly done some act or made some admission inconsistent with the claim or defense which he proposes to set up, and another must have acted on such admission."

If this is not law, then a man is bound to refrain from employing agents to carry on any business for him in connection with any property unless he does so at his peril. The principal cannot give notice to all the world that he is the owner of the property and that his employe is but his agent to sell at retail. When the world finds the agent selling at retail con-

stantly and habitually, it makes no difference to the customers of such business whether the one in charge is the owner or agent for the real owner. Because if he is the owner, the purchasers at retail are safe, but if he is not owner, but merely an agent, such retail purchasers are equally safe, because the owner in suffering him to habitually and constantly sell at retail has held him out to the public as clothed with authority to make such sales at retail. The doctrine of *estoppel in pais* directly applies to such sales to prevent the owner from disputing their validity.

But where the whole business is sold out, as was practically done in this case, by the agent without the knowledge, consent or authority of the principal, there are no facts on which an *estoppel in pais* can rest.

In *Dean* v. *Doe*, 8 Ind. 475, at page 479, it is said: "Estoppels are said to be odious. But the truth is, says Smith, that the courts have, for some time, been favorable to the doctrine of estoppel—hostile to its technicality. 2 Lead. Cas. 460. It is only when used to entrap by formal statements and admissions, looked upon as unimportant when made, and by which no one was ever deceived or induced to alter his position, that estoppels are still, as formerly, odious."

In *Lash* v. *Rendell*, 72 Ind. 475, Rendell purchased certain land on which there was a judgment lien which he agreed to pay as a part of the purchase-price. When he came to pay the judgment, he found several receipts of payments endorsed on the record where the judgment was entered, and supposing them correct, paid the balance of the judgment to the clerk of the court, and paid all the balance of the purchase-money to the administrator of the estate of the deceased vendor. The receipts proved to be incorrect, being for too much. When sued by the owner of the judgment for the balance he set up these facts,

and his *bona fide* reliance on the receipts in estoppel of the owner of the judgment and that the estate of the deceased vendor had been finally settled. It was there said "that the law does not provide for the receipting of judgments upon the record, or the effect of such receipts, and that they are subject to be explained or contradicted as against purchasers without notice. It would seem, therefore, that such receipts as these set up in the first paragraph of answer * * * * could hardly be regarded a good plea of estoppel. Every estoppel, because it concludeth a man to allege the truth must be certain to every intent, and not to be taken by argument or inference. Co. Lit. 352 b." To the same effect is *Brickley* v. *Edwards*, 131 Ind. 3.

The case just quoted from has an important bearing here because the law does not provide for the mode of transferring ordinary personal property any more than receipting on the record for the payment of a judgment, as the law was at that time. And also the case involves the element of contributory negligence on the part of the one relying on the receipts. He was bound to know that they could be contradicted or explained. Hence the duty devolved on him to inform himself as to what the true amount of the judgment was which remained unpaid. If there had been, as the court intimates, an honest mistake made by duplicating a receipt for one payment, which was unintentional on the part of the judgment plaintiff, that was not good ground for an estoppel.

The case last quoted from strongly supports *McGirr* v. *Sell*, and would have to be overruled if the latter case should be.

The facts in the *Peters Box and Lumber Co.* v. *Lesh*, 119 Ind. 98, are that the appellant, carrying on a saw mill business in Fort Wayne, had previously em-

ployed one, Milliard, to purchase logs for such appellant, which fact was known to appellees. Lesh *et al.* lived and did business in Kosciusko county, Indiana. With this knowledge on the part of said appellees, said Milliard, representing himself to them as the agent of said lumber company, purchased of said appellees a lot of saw logs for said lumber company, which were to be shipped to said lumber company at Fort Wayne, Indiana, and on receipt thereof said company was to send a draft on New York for the purchase-price. Said Milliard requested that the bill of lading be made out in his name, which was accordingly done by the consent of the sellers. It turned out that Milliard was not acting as the agent of the lumber company at that time, and that he immediately sold the logs to the lumber company, who in good faith, believing they were the property of Milliard, from the bill of lading, paid him therefor their value in cash and he decamped with the money.

On this state of facts the appellant lumber company defended the suit to recover the value of the logs by said appellees on the ground that they were equitably estopped from asserting title to the logs by the circumstances of their permitting the bill of lading to be made out in Milliard's name, and the subsequent purchase by the appellant in good faith, relying on said bill of lading showing title in said Milliard. But the trial court denied such defense, and this court affirmed the judgment.

After quoting from *Alexander* v. *Swackhamer, supra,* a part of which is already quoted in this opinion, Coffey, J., speaking for the court, said: "If the appellees acted under the belief that Milliard was the agent of the appellant, and that they were selling the property to the appellant, basing such belief on the representations made to them by Milliard, we do not

think that they would be estopped from claiming their property by reason of permitting the bills of lading to be made out in the name of the supposed agent." To the same effect is *Hays* v. *Reger*, 102 Ind. 524. These two cases support *McGirr* v. *Sell*, and would have to be overthrown if it is overruled.

They were correctly decided, because in the former case the appellant, Lesh, the owner of the judgment, did not know the facts out of which her rights sprung when she did the acts which were set up to estop her. She did not know that duplicate receipts of one payment had been placed on file. And in the other case, Lesh *et al.* did not know the facts out of which their rights sprung when they did the act set up to estop them, namely, allowing the bill of lading to be made out in the name of Milliard, they supposing from his false representations that they were selling the logs to the lumber company through him as the agent of such company. So that in both cases there was an essential element of an *estoppel in pais* lacking. In *Robbins* v. *Magee*, 76 Ind. 381, *supra*, at page 388, Elliott, J., speaking for the court, said: "The doctrine that a person who does an act in excusable ignorance of a material fact is not thereby estopped, is founded in sound reason and is well sustained by authority."

In the *Greensburgh, etc., Turnp. Co.* v. *Sidener*, 40 Ind. 424, it was said: "To constitute a valid estoppel by conduct, there must be knowledge on the part of the party sought to be estopped, and want of knowledge on the part of the party relying upon the estoppel."

To the same effect are *Allen* v. *Frazee*, 85 Ind. 283; *Hays* v. *Reger, supra; Hosford* v. *Johnson*, 74 Ind. 479.

And the same principle underlies and supports *McGirr* v. *Sell*. The answer upon which the question there arose not only failed to show that Sell, by act, conduct or declaration, induced McGirr to levy upon,

take and convert the property in controversy, but it also failed to aver that Sell had any knowledge or notice, or that he had the means of knowledge or notice of any of the acts of McGirr in levying upon or selling the property. Nor was it averred anywhere in said answer that the fact that McCoy was authorized to and carried on said business in his own name, was held out as the ostensible owner and contracted the debts as such owner on which the judgments and executions were founded by virtue of which McGirr seized the property, were even known to McGirr, much less that such facts led or induced him to make such seizure and levy. Moreover, there is nothing in the answer in *McGirr* v. *Sell*, conceding that the Constable McGirr succeeded to the rights of the creditors, to show that such creditors would be injured by permitting Sell to assert title to the property. His assertion of title was founded on the fact that he was principal and that McCoy was his agent, and that therefore he was the real debtor. If he was solvent, his assertion of title to the property could not injure the creditors, because they could enforce collection from him. There was no pretense in the answer in estoppel that he was not solvent. As was said in *Anderson* v. *Hubble*, 93 Ind. 570, at page 578: "A settled rule of pleading is that estoppels must be especially pleaded and pleaded with great particularity and precision, leaving nothing to intendment."

In *Fletcher* v. *Holmes, supra,* it is said: "The door is shut against asserting a right when that would result in doing an injury by the person asserting it to some other person." And in *Anderson* v. *Hubble, supra,* at page 578, it is said: "It is quite clear that one who has not parted with value or has not placed himself in a position where he would suffer loss, can have no

just right to conclude his adversary from averring the truth."

To the same effect are *Maxon* v. *Lane*, 124 Ind. 592; *Wisehart* v. *Hedrick*, 118 Ind. 341; *Babcock* v. *Peoples' Savings Bank*, 118 Ind. 212; *Stringer* v. *Northwestern Mut. Life Ins. Co.*, 82 Ind. 100.

And so in the case at bar, there is no averment in either of the answers in estoppel of the insolvency of the appellee, Mrs. Klinsick, or any reason stated why A. Kiefer & Co. could not have enforced collection of their debt from her. The assertion of title by her to the goods was equally an assertion that she was their debtor.

While we do not mean to approve of all that was said in *McGirr* v. *Sell*, yet we cannot say that a wrong conclusion was reached on the facts disclosed in the answer.

It follows from what we have said, that the circuit court did not err in overruling the motion for a new trial.

Judgment affirmed.

Filed December 17, 1895; petition for rehearing overruled February 20, 1896.