## CATHCART ET AL. *v.* DALTON.

[No. 10,099.   Filed December 17, 1919.]

1. HUSBAND AND WIFE.—*Conversion.—Chattel Mortgages.—Knowledge.—Burden of Proof.*—In an action by a wife for conversion of a stock of goods seized by defendants under a chattel mortgage executed by the husband without authority, where the defense was that the wife had led the defendants to believe that the property was owned by the husband, the defendants had the burden of proving their want of knowledge of the ownership or claim of ownership on the part of the wife. p. 654.

2. CHATTEL MORTGAGES.—*Sales Under Mortgages.—Action for Conversion.—Defense of Estoppel.—Question for Jury.*—In an action for conversion of goods sold under a chattel mortgage executed without authority by an agent, where the defense is estoppel by conduct in permitting the agent to so conduct the business as his own as to lead defendants to believe that he was the owner, knowledge or the want thereof, on the part of defendants, as to plaintiff's ownership of the property, is a question of fact for the jury. p. 654.

3. CHATTEL MORTGAGES.—*Sales Under Mortgages.—Strict Compliance With Terms.*—One who takes property under the terms of a chattel mortgage and sells the same, must, in a subsequent action for conversion by an alleged owner thereof, prove an advertisement of the sale by the notices, in the places and for the time prescribed by the mortgage. p. 654.

4. SALES.—*Agent to Sell at Retail.—Sales at Wholesale.*—Power to sell at retail does not authorize a sale at wholesale. p. 655.

5. CHATTEL MORTGAGES.—*Agent to Conduct Business.—Undisclosed Principal.—Mortgage by Agent.—Rights of Mortgagee.*—When an agent with power to conduct the business in his own name at retail mortgages, to a creditor for balance due on goods purchased, the entire stock of goods, the mortgagee has only the rights of a general creditor in the property, since to uphold the mortgage would be to effectuate a sale at wholesale, but the mortgagee would have, upon discovery of the fact of agency, a right of action against the owner for the amount of his debt. p. 655.

6. CHATTEL MORTGAGES.—*Husband and Wife.—Agency.—Conversion.—Instructions.*—In an action by the wife for conversion of her stock of goods, taken by the defendants under a chattel mortgage executed by the husband without authority, an instruction

was correct that told the jury that, where the defendants relied on an estoppel of the plaintiff to claim ownership by having permitted her husband to operate the store, buy and sell goods, etc., in his own name, such an agency did not authorize a sale at wholesale or mortgage of the goods, and that the wife would not be bound by a mortgage given without her knowledge or authority nor by a sale at wholesale under the mortgage, and that if the defendants sold her property under such a mortgage, she was entitled to recover its value. p. 656.

From Orange Circuit Court; *William H. Paynter,* Judge.

Action by Margaret E. Dalton against John M. Cathcart and another. From a judgment for plaintiff, the defendants appeal. *Affirmed.*

*Arthur McCart, George McMahan* and *Elliott & Houston,* for appellants.

*W. H. Talbott* and *Mitchell & Mitchell,* for appellee.

McMAHAN, J.—This is an action by appellee against appellants for damages for the alleged conversion of a stock of groceries and fixtures in a certain store in Campbellsburg, Indiana, alleged to have been the property of appellee. Appellants' answer was in two paragraphs, the first a general denial, and the second estoppel.

There was a verdict and judgment in favor of appellee. The only assignment of error relates to the action of the court in overruling appellants' motion for a new trial. The particular errors relied upon are: (1) That the verdict is not sustained by sufficient evidence; and (2) that the court erred in giving to the jury instruction No. 4 tendered by appellee.

As to the first contention, the facts as disclosed by the evidence are in substance as follows: Prior to

April 22, 1914, appellee was the owner of a house and two lots, and on said day she exchanged the same with one Jonathan P. Tarr for a stock of groceries and fixtures located at Paoli, Indiana. In this exchange the value of the stock and fixtures was $625 greater than the value of the house and lots and, for the purpose of making up the difference in value, it was agreed that notes aggregating $625 should be executed by appellee, and that the same should be secured by a mortgage on said stock of groceries and fixtures. Appellee's husband, George L. Dalton, conducted the negotiations leading up to this exchange, and, instead of appellee signing said notes, her husband signed his name to them and, in order to secure the same, he, in his own name, executed a mortgage on said stock and fixtures to Mr. Tarr. This stock of goods and fixtures were removed from Paoli to Campbellsburg, where appellee's husband rented a storeroom, into which said property was moved, paid the rent, taking receipts in his own name. The stock and fixtures were listed with the township assessor in his name for taxation. He purchased goods to replenish the stock when necessary, paying for the same out of the receipts of the store. The money received from the sale of goods in the store was deposited in the bank in the name of George L. Dalton and, in paying for goods purchased and used in the store, he drew his check for the amount required. While the store was being thus operated, George L. Dalton purchased cattle and hogs of John M. Cathcart, said cattle and hogs being butchered and sold at retail from the store. In March, 1915, there was a balance of $198.40 due Cathcart on account of said purchases. Cathcart at that time asked Mr. Dalton

for a settlement, and a note for said amount payable to Hettie O. Cathcart, due one day after date, was executed by Mr. Dalton and, in order to secure the payment of said note, Mr. Dalton in his own name executed a mortgage on said stock of groceries and fixtures. Appellee never authorized the execution of said note and mortgage, and had no notice or knowledge of their execution until July 14, 1915, and after John M. Cathcart as agent of his wife had demanded and taken possession of said stock of goods and fixtures under the terms of the chattel mortgage, which provided, among other things, that, in default in the payment of the sum thereby secured when due, Mrs. Cathcart should be entitled to possession. On July 14, 1915, appellant John M. Cathcart, acting on behalf of his wife, called on Mr. Dalton at the store and demanded possession of the property described in the mortgage. On his demand he secured the key to the store building and took possession of the property. Within a few minutes thereafter, appellee entered the storeroom and notified Mr. Cathcart that the property belonged to her and forbade him taking it. She demanded that the keys and possession of the property be delivered to her. This was refused. Appellants reopened the store for three or four days and sold at retail and then advertised the store for sale and, on the day when it was to be sold, and just as it was being offered for sale, the appellee forbade the sale, and again notified the appellants that the property belonged to her. The appellants, however, proceeded with the sale, and the stock of groceries and fixtures were, on July 27, 1915, put up at auction and sold to John M. Cathcart for $202. He immediately took possession of the same. The evidence as to the

value of the property at the time appellants took possession thereof, and at the time of the sale, varied greatly. Some witnesses placed the value at $500, while others placed it as high as $1,600. The mortgage contained a provision authorizing the sale of the property by the mortgagee, "after giving ten days' notice of the time, place and terms of sale with a description of the property to be sold by at least ten advertisements, in print or writing posted in public places in the vicinity where the sale is to take place."

John M. Cathcart accompanied Mr. and Mrs. Dalton to Paoli the day when the trade was made with Mr. Tarr, and George L. Dalton testified 1. that he told appellant Mr. Cathcart at that time that appellee's property was paying for the stock of goods and fixtures. This was an important item of the evidence, inasmuch as appellants in their answer had alleged that appellee by her conduct had led them to believe that the property was owned by George L. Dalton, and that they had no knowledge or means of knowing of any claim of ownership by appellee. The burden was on the appellants to prove want of knowledge of ownership or claim of ownership on the part of appellee. Mr. Cathcart did not directly deny this statement of Mr. Dalton, although he inferentially did so by testifying that he had no notice or knowledge that appellee claimed the property until July 27, 1915, when the property was being sold under the mortgage.

Appellants, by the fifth instruction tendered by them and given by the court, recognized the fact that it was necessary for them to prove want of 2-3. knowledge of ownership by appellee. By this instruction the court told the jury that, if they

found from the evidence that appellants extended credit to George L. Dalton and took the note and mortgage in the honest belief that he, George L. Dalton, was the owner of the stock of goods and fixtures, and that said belief was brought about by the acts and conduct of appellee in allowing her husband to manage and conduct the store as disclosed by the evidence, the verdict should be for the defendants. Knowledge or want of knowledge on the part of appellants of appellee's ownership of the property was a question of fact for the jury. It was also incumbent on appellants to prove that they advertised the property for sale by posting a written or printed notice in ten public places at least ten days before the date of sale. This they failed to do. The only reference to this subject is in the testimony of John M. Cathcart, where he said, "I advertised the property for sale." The manner in which it was advertised for sale is not disclosed. It does not appear that any written or printed notices of the sale were posted as was provided in the mortgage.

Appellants make no claim or contention that the appellee was not in fact the owner of the stock and fixtures. Their contention is that, under the 4-5. evidence, she is estopped to claim ownership, and for that reason the verdict is not sustained by sufficient evidence. If the appellee was the owner, and her husband was in possession as her agent, with power to conduct the business and contract debts, but without power to mortgage, then the rights of appellants were only such as a general creditor has in the property of his debtor  Power to sell at retail does not authorize a sale at wholesale. If appellant's mortgage be upheld, it results in a sale

at wholesale. Appellants contend that the appellee estopped herself by her conduct in permitting her husband to take and remain in possession of the stock of goods and fixtures, buying and selling and conducting the business in his own name; that the fact that he was in possession, conducting said business in his own name and exercising the powers of ostensible ownership, induced the appellants to believe that he was the owner thereof, and that they gave him credit and sold goods to him upon the belief that he was the owner thereof. It will be observed that this contention is not based upon the conduct of appellee at the time of the execution of the mortgage, but upon her conduct prior to that time. The rights of appellants in the property in controversy, if any they had prior to the execution of the mortgage, were only such rights as they acquired by reason of being creditors of the appellee or of George L. Dalton. There is no allegation in the answer, nor is there any evidence that Mrs. Dalton was insolvent. If the appellee was the owner of the stock of goods and fixtures, she was, insofar as the appellants are concerned, an undisclosed principal, and, when appellants discovered that fact, they had a right to prosecute an action against her as such. *Kiefer* v. *Klinsick* (1896), 144 Ind. 46, 42 N. E. 447.

Appellants contend that the court erred in giving instruction No. 4, requested by appellee, and which reads as follows: "The defendants in this case rely upon an estoppel of this plaintiff to claim the ownership of the goods in question by reason of her permitting her husband to conduct the store, to buy and sell goods in his own name and to deposit the money in his own name and in general

to carry on a retail store in his own name. You are further instructed that such an agency to sell at retail does not permit him to mortgage the goods and sell at wholesale, and that she would not be bound by a mortgage given without her knowledge or authority and that a sale at wholesale under the mortgage does not bind her, and if the defendants sold her property under such a mortgage she is entitled to recover the value of the goods so sold.'' Appellants say that this instruction is not only incorrect, but that it is in conflict with instruction No. 4 tendered by appellants and given by the court. Appellants insist that instruction No. 4, given at their request, is a correct statement of the law, and a quotation from *Preston* v. *Witherspoon* (1887), 109 Ind. 457; 9 N. E. 585, 58 Am. Rep. 417, and *Cowdrey* v. *Vandenburgh* (1879), 101 U. S. 572, 25 L. Ed. 923. In this appellants are in error.

It is neither a correct quotation nor a correct statement of the law. It omits a very necessary part of the statement as contained in the cases cited, and should have been modified before it was given. The only confusion in the instructions arises because of the giving of the fourth instruction tendered by appellants. There was no error in giving instruction No. 4 tendered by appellee. The verdict of the jury is sustained by the evidence. The motion for a new trial was correctly overruled.

Judgment affirmed.